**Garces A. ESTRADA a/k/a Charlie Andrades, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 342–92.**

Court of Criminal Appeals of Texas, En Banc.

Feb. 3, 1993.

Kristine C. Woldy, Houston, for appellant.

John B. Holmes, Jr., Dist. Atty., and Carol M. Cameron, Asst. Dist. Atty., Houston, Robert Huttash, State's Atty., Austin, for the State.

**OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW**

CAMPBELL, Judge.

Appellant was convicted by a jury of delivery by offering to sell a controlled substance, namely, cocaine, weighing by aggregate weight, including any adulterants or dilutants, at least 400 grams. He was sentenced by the court to twenty-five years imprisonment and assessed a fine of $10,000. The conviction was affirmed. *Estrada v. State,* 824 S.W.2d 770 (Tex.App.— Houston [14th], 1992).

After careful review of the petition for discretionary review and the opinion of the Court of Appeals, we have determined that appellant's petition for discretionary review was improvidently granted. Appellant's petition for discretionary review is dismissed.

OVERSTREET, J., dissents.

CLINTON, Judge, dissenting.

The Court grievously errs in its determination that this petition for discretionary was "improvidently granted."

We should decide whether the court of appeals correctly proceeded on an underlying legal theory that "[t]his offer to deliver [sic] cocaine occurred during four different meetings and involved a group of five different people," to conclude from "the totality of the circumstances involved in this transaction and the appellant's constant presence and closeness with the entire drug sale" that appellant is guilty as a *party* to the "felony offense of delivery by *offering to sell* a controlled substance, namely cocaine." *Estrada v. State*, 824 S.W.2d 770, at 771–772, 773–774 (Tex.App.—Houston [14th] 1992).[1]

Yet, on the same day the same panel of the same court in an opinion written by the same justice held that the same offense committed by the principal actor was complete the moment he *alone* first offered to sell the same amount of cocaine. *Vivanco v. State*, 825 S.W.2d 187, at 189 (first paragraph) (Tex.App.—Houston [14th] 1992); *viz:*

"The court of criminal appeals ... in *Stewart v. State*, 718 S.W.2d 286 (Tex. Cr.App.1986) ... distinguished the offense of delivery *by offer to sell* from the offense of *delivery* of a controlled or simulated controlled substance. * * * *

*The offense of delivery by offer to sell is complete when the appellant makes his offer.* * * * * The court in *Stewart* explains that 'When the prosecution involves delivery by "offer to sell" that element can be met by the representation, by word or deed, that the person has a controlled substance to sell. The chemical properties or indeed, the presence or possession of any substance is not necessary to the offense.' This is clearly the situation in this case. Appellant represented by word that he could supply eight kilos of a controlled substance.... The cumulative and combined force of the evidence indicates *a reasonable trier of fact could have found the appellant guilty of delivery by offer to sell, without regard to whether he actually delivered the agreed on amount of cocaine or not.*" *Id.*, at 190–191.[2]

As is its wont when represented by the instant appellate prosecutorial office, the State dismisses the teaching of *Stewart* as "supported neither by law nor logic." State's Reply Brief, at 12. Because of its several followers identified *ante*, we should not shirk the responsibility to determine whether *Stewart* remains viable against the notion that delivery by an offer to sell is not complete until actual delivery is made.

To the refusal of the Court to address the important issue joined in this cause, I respectfully dissent.

BAIRD, Judge, dissenting.

Appellant was convicted by a jury of delivery of a controlled substance, by offer to sell.[1] The Court of Appeals affirmed. *Estrada v. State*, 824 S.W.2d 770 (Tex. App.—Houston [14th], 1992). We granted appellant's petition for discretionary review to determine whether the evidence was suf-

---

1. All emphasis here and throughout this opinion is mine unless otherwise indicated.

2. Followings of the seminal opinion in *Stewart v. State*, supra, include:

    *Ramirez v. State*, 822 S.W.2d 240, at 244 (Tex. App.—Houston [1st] 1991) PDR refused;

    *Rodriguez v. State*, 819 S.W.2d 920, at 927 (Tex.App.—Houston [14th] 1991) (cc to *Vivanco* );

    *Pena v. State*, 776 S.W.2d 746, at 748–749 (Tex.App.—Corpus Christi 1989) PDR refused.

1. Tex.Rev.Civ.Stat. 4476–15 § 4.03(a). This provision is now found in Tex.Health & Safety Code Ann. § 481.112(a).

ficient to sustain the conviction.[2] The majority finds that decision was improvident. *Estrada v. State*, 846 S.W.2d 332, 332 (Tex. Cr.App.1993). Judge Clinton dissents, believing the Court should decide *when* an offer to sell a controlled substance is complete. *Estrada v. State*, 846 S.W.2d 332, 333 (Tex.Cr.App.1993) (Clinton, J. dissenting) ("[W]e should not shirk the responsibility to determine whether *Stewart* [*v. State*, 718 S.W.2d 286 (Tex.Cr.App.1986) ] remains viable against the notion that delivery by an offer to sell is not complete until actual delivery is made."). While me must ultimately decide *when* an offer to sell is complete, I write separately because the evidence in the instant case is insufficient to support such a conviction, regardless of when an offer to sell is complete.

## I.

The indictment alleged that appellant:

... on or about May 26, 1989, did then and there unlawfully intentionally and knowingly deliver by offering to sell to A.R. Diaz, a controlled substance, namely cocaine, weighing by aggregate weight, including any adulterants and dilutants, at least 400 grams.

At trial, the jury was instructed on the law of parties.[3] *See,* Tex.Penal Code Ann. § 7.02(a)(2).

Viewed in the light most favorable to the prosecution, the evidence established that on May 25, 1989, Harris County Sheriff's Department Detectives Diaz and Schulte met with an informant. The informant introduced Diaz to Jairo Manuel Vivanco. Diaz stated an interest in purchasing eight kilos of cocaine and Vivanco quoted a price of $17,000.00 per kilo for a total price of $136,000.00. Vivanco wished to inspect the money before calling his connection. Diaz

escorted Vivanco to Schulte's truck where Schulte displayed $140,000.00 in cash. Vivanco stated he would contact Diaz after talking to his connection. Diaz gave Vivanco his pager number. Vivanco left and was followed by police to an apartment complex (hereinafter referred to as "Vivanco's complex"). *Appellant was not present during this meeting.*

At approximately 1:00 p.m. on May 25, Vivanco paged Diaz, and stated his connection would meet Diaz at 1:30 p.m. Shortly thereafter, Vivanco, Jimmy Rodriguez, and Johnny Rodriguez were observed leaving Vivanco's complex. Diaz arrived and was introduced to Jimmy and Johnny. Jimmy, who was introduced as the person with the drug connection, asked to inspect the money. Diaz and Jimmy went to Schulte's truck where Schulte displayed $140,000.00 in cash. After making a telephone call Jimmy stated the cocaine would be available at 5:30 p.m. that afternoon. *Appellant was not present at this meeting.*

Vivanco, Jimmy, and Johnny returned to Vivanco's complex. Later, appellant and Overt Alegria arrived at Vivanco's complex. Appellant, Vivanco, Jimmy, Johnny, and Alegria, were observed loading clothes into two vehicles. Completing their task, Vivanco, Johnny, and Jimmy drove away and appellant and Alegria departed in another vehicle. Before leaving the complex, Alegria retrieved a gray duffle bag from a trash dumpster.

Vivanco paged Diaz and stated the cocaine had arrived. A third meeting was arranged for 6:00 p.m. on May 25 at a Dairy Queen. Diaz and Schulte arrived to meet Vivanco, Jimmy and Johnny. *Appellant was not present.* Schulte and Diaz were instructed to follow Vivanco. Vivanco drove to another apartment complex. During this meeting, Vivanco directed Diaz

---

**2.** We further granted review to determine whether the trial judge erred in submitting a special issue to the jury on the use and exhibition of a deadly weapon. Because I believe the evidence insufficient to support appellant's conviction, I do not address appellant's second ground for review.

**3.** The charge provided:

... a person is criminally responsible for an offense committed by the conduct of another if, acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense. Mere presence alone will not constitute one a party to an offense.

to the back seat of the vehicle where Johnny was sitting. Johnny displayed several block-like objects wrapped with gray duct tape. Diaz became suspicious, never having observed cocaine packaged in such a manner. Diaz requested the opportunity to test the substance and Vivanco refused. Diaz stated he would not purchase eight kilos of cocaine without testing the substance. Again Vivanco refused and left, informing Diaz he would contact him later. While these events occurred, appellant and Alegria were seen driving in the area. At one point, Alegria left the vehicle and walked through the apartment complex towards the street where appellant picked him up.

At approximately 10:00 p.m. on May 25, Vivanco paged Diaz. Diaz demanded that he be allowed to cut into the packages to test the cocaine. An agreement was made to meet the following morning at a parking lot beside a Safeway Store.

On the morning of May 26, Jimmy, Johnny, Vivanco, appellant, and Alegria exited an apartment in Vivanco's complex. Johnny was carrying a gray bag similar to the bag Alegria retrieved from the dumpster. Vivanco, Johnny, and Jimmy drove away in one vehicle and appellant and Alegria left in another vehicle. At approximately 11:30 a.m., Diaz parked in front of the Safeway. Schulte parked nearby. Jimmy, accompanied by Vivanco and Johnny, parked next to Diaz. Initially, appellant and Alegria parked in a parking lot north of the Safeway. Appellant changed shirts and then drove into the Safeway lot, parking approximately five aisles from Vivanco and Diaz. Appellant exited his vehicle and walked away from Vivanco and Diaz. Alegria walked towards the front of the Safeway store.

At the same time, on the other side of the lot from appellant, Diaz was inside Vivanco's vehicle inspecting the drugs for the sale. After inspecting the samples, Diaz stated he was going to Schulte's truck to get the money. As Diaz walked away, he gave an arrest signal. Appellant was arrested and found in possession of a loaded revolver.

## II.

Appellant contends the offer occurred between Vivanco and Diaz, and no evidence connects him as a party to that offense. Appellant argues the evidence establishes only his mere presence at the scene of the actual transfer and such evidence is insufficient to support a conviction under the law of parties.

The State contends the offer to sell was ongoing throughout all four· meetings. The State argues appellant aided and attempted to aid Vivanco in the commission of the offense by providing surveillance, armed support, and protection during the period of negotiations and during the transfer of the substances to Diaz.

The Court of Appeals held, considering the totality of the circumstances involved "in this transaction and the Appellant's constant presence and closeness with the entire drug sale, a rational jury could have found beyond a reasonable doubt all of the essential elements of delivery by offering to sell a controlled substance and that Appellant was guilty as a party to the offense." *Estrada*, 824 S.W.2d at 774.

## III.

Evidence is sufficient to support a conviction under the law of parties where the actor is physically present at the commission of the offense, *and encourages the commission of the offense either by words or other agreement.*[4] *Burdine v. State*, 719 S.W.2d 309, 315 (Tex.Cr.App.1986). The evidence must demonstrate the parties were acting together at the time of the offense, each contributing some part towards the execution of a common purpose. *Id.* When determining whether a defendant is a party, the court may examine the events occurring before, during, and after the commission of the offense, and may rely on the actions of the defendant which

---

**4.** All emphasis herein is supplied by the author unless otherwise indicated.

demonstrate an understanding and common design to commit the offense. *Ibid.*

In the instant case, there is *no* evidence to indicate appellant encouraged, aided, or directed Vivanco during the offer to sell. The only evidence connecting appellant with the transaction between Vivanco and Diaz was his *mere presence* at the apartment complexes, and his presence in the Safeway parking lot at the time of his arrest. Although Alegria was seen retrieving a gray duffle bag from a dumpster and getting into a vehicle driven by appellant, there is *no* evidence the bag contained cocaine and no evidence appellant had any knowledge of its contents. The evidence demonstrates appellant was several hundred yards from Vivanco and Diaz at the time of his arrest. Appellant gave no verbal orders, and made no signals to anyone. Appellant did not use nor exhibit a weapon at any time during the negotiations or transfer of the controlled substances to Diaz. Mere presence at the scene of a crime is insufficient to constitute one as a party. *Oaks v. State*, 642 S.W.2d 174, 177 (Tex.Cr.App.1982); *and, Rhyne v. State*, 620 S.W.2d 599, 601 (Tex.Cr.App.1981). Therefore, regardless of when the offer to sell is complete, there is no evidence that appellant encouraged or directed the commission of the offense. Accordingly, the evidence is insufficient to support appellant's conviction.

With these comments, I respectfully dissent.

MALONEY, J., joins this opinion.