Laquan Cameron MILES, Appellant,

v.

The STATE of Texas, Appellee.

No. 71742.

Court of Criminal Appeals of Texas,
En Banc.

Feb. 28, 1996.

Hoagie L. Karels, John M. Hurley, Waco, for appellant.

Crawford Long, Mark E. Parker, Assistant Dist. Attys., Waco, Robert A. Huttash, State's Atty., Austin, for State.

## OPINION

MALONEY, Judge.

Appellant, Laquan Cameron Miles, was convicted of capital murder committed in August, 1991. TEX.PENAL CODE ANN. § 19.03(a). During the punishment phase the jury affirmatively answered the special issues set forth in Texas Code of Criminal Procedure art. 37.071(b). The trial judge sentenced appellant to death as required by Texas Code of Criminal Procedure art. 37.071(e). Direct appeal is automatic. TEX.CODE CRIM.PROC. ANN. art. 37.071(h). We will reverse and remand appellant's conviction.

Appellant presents twenty-one points of error and challenges the sufficiency of the evidence at both stages of trial. We will address the sufficiency of the evidence at the guilt/innocence stage first.

In points ten through twelve, appellant alleges that the evidence was insufficient to sustain the verdict of guilt on each of three grounds, that he intentionally: 1) caused the deaths of Oscar Rose and Jackie Mayberry, 2) caused the death of Oscar Rose in the course of committing or attempting to commit robbery, and 3) caused the death of Oscar Rose in the course of committing or attempting to commit kidnapping. Furthermore, appellant claims that the evidence is especially insufficient "when the hearsay statement of Tyrone Holden to Robert Louis Peterson is excluded."

We first note that in reviewing the sufficiency of the evidence, "the appellate court must look at all the evidence, whether properly or improperly admitted." *Alexander v. State,* 866 S.W.2d 1, 3 (Tex.Crim.App. 1993), *cert. denied,* — U.S. —, 114 S.Ct. 1869, 128 L.Ed.2d 490 (1994). In the event a portion of the evidence was erroneously admitted, the accused may complain on appeal of such error. *Thomas v. State,* 753 S.W.2d 688, 695 (Tex.Crim.App.1988). The admission of inadmissible evidence is considered trial error and thus the proper remedy is to reverse the conviction and remand for a new trial. *See Beltran v. State,* 728 S.W.2d 382, 389 (Tex.Crim.App.1987). But jurors do not act irrationally in taking such evidence into account, since they are bound to receive the law from the trial judge. *Thomas,* 753 S.W.2d at 695. All evidence which the trial judge has ruled admissible may therefore be weighed and considered by the jury, and a reviewing court is obligated to assess the jury's factual findings from this perspective. *Id.* Accordingly, Holden's statement is properly included in the evaluation of the sufficiency of the evidence.

Reviewing the evidence in the light most favorable to the verdict, the following facts are established. On July 2, 1991, Theodore Myles bought appellant a nine-millimeter Tech 9 gun at appellant's request. Giving appellant the weapon immediately after its purchase, Myles noted that appellant referred to the gun as his "baby." On August 23, 1991, around 10:30 p.m., victims Oscar Rose and Jackie Mayberry took Rose's car to a car wash.

In the early morning hours of August 24, 1991, Donna Heitmiller heard gunshots fired near her home.[1] After a second set of shots heard minutes after the first shots, Heitmiller heard two cars racing on the gravel road in front of her house.

On his way home from work on August 26, 1991, Nick Garcia discovered two bodies in a ditch near the gravel bridge running over the creek which flows near the Heitmiller home. The bodies were later identified as those of Rose and Mayberry.

According to the medical examiner, the bodies had been in the August heat for at least a couple of days prior to discovery. Examination revealed Rose had sustained two gunshot wounds[2] to the back of the head and a shotgun blast to the chest, each of which was fatal in and of itself. Mayberry had sustained a shotgun blast to his head which took off a good portion of his skull.

On September 20, 1991, Houston Officer Nolan Chaline stopped appellant driving a Buick Regal.[3] On running a check of the license plates, the officer found the plates to be registered to a Chrysler. A check of the vehicle identification number revealed that the Regal was owned by Oscar Rose and was the subject of investigation by the Waco authorities in connection with a homicide investigation. An inventory search of the car uncovered a Tech 9 nine-millimeter gun registered to Theodore Myles. Ballistics exami-

nation positively identified the weapon as having fired the two rounds discovered at the scene of the Waco homicide a month earlier.

Robert Peterson related a story to the jury that his friend Tyrone Holden[4] had told him in late August, 1991.[5] Holden told Peterson that he had traveled to Waco with Tyrone Mitchell and appellant. Along the way, they picked up a fourth person and the four ended up at a car wash where two men (later identified as the victims Rose and Mayberry) were washing a Buick Regal. Holden claimed that the other three drew guns on Rose and Mayberry and tried to get Holden to place the victims in the truck of Rose's Regal. Holden refused so the others proceeded to force the victims into the trunk of the car.

Appellant and the fourth person then got into the Regal while Mitchell and Holden got into Mitchell's Oldsmobile. The two cars were then driven to "something like a ditch ... where some water was" and Holden watched while appellant and the fourth person took the victims out of the trunk of the Buick and made them get to their knees. Appellant and the fourth man then executed them and dumped their bodies into the ditch. The four then got back into their respective vehicles and went to a local residence to drop off the Oldsmobile and the fourth person. Appellant, Mitchell, and Holden then all got into the Regal and returned to Houston.

Throughout his recitation to Peterson, Holden maintained that he did not participate in any fashion. He also stressed that he was afraid of the others and the only reason that he got into a vehicle he knew to have been stolen was to return home to Houston.

Given the evidence, we hold that a rational trier of fact could have found appellant *guilty* of capital murder beyond a reasonable doubt under any of the theories alleged. *Alexan-*

1. Heitmiller's nearest neighbors were from an eighth to a quarter of a mile away.

2. Each of the gunshot wounds was consistent with a wound that could have been caused by a 9 mm bullet.

3. The record does not reveal the precise reason or manner of the stop.

4. Holden was shot in the back and killed by an unknown assailant in late December, 1991.

5. Peterson did not relate this statement to the police until January, 1993.

*der, supra.* Points of error ten through twelve are overruled.

■ In point twenty-one, appellant alleges that the evidence is insufficient to support the jury's affirmative answer that appellant would be a danger in the future. In reviewing the sufficiency of the evidence at the punishment stage, this Court views the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could make the finding beyond a reasonable doubt. *Barnes v. State*, 876 S.W.2d 316, 322 (Tex.Crim.App.), *cert. denied*, —— U.S. ——, 115 S.Ct. 174, 130 L.Ed.2d 110 (1994).

■ The jury is permitted to look at several factors in its review of future dangerousness including, but not limited to:

1. the circumstances of the capital offense, including the defendant's state of mind and whether he was working alone or with other parties;
2. the calculated nature of the defendant's acts;
3. the forethought and deliberateness exhibited by the crime's execution;
4. the existence of a prior criminal record, and the severity of the prior crimes;
5. the defendant's age and personal circumstances at the time of the offense;
6. whether the defendant was acting under duress or the domination of another at the time of the offense;
7. psychiatric evidence; and
8. character evidence.

*Barnes, supra; Keeton v. State*, 724 S.W.2d 58, 61 (Tex.Crim.App.1987) (*"Keeton I"*).

As related earlier, the facts of the instant case are those of calculation, forethought, and deliberateness. Apparently, not much time passed once the group arrived at the car wash, indicating that some thought had been given the plan before their arrival. In addition to the facts of the instant case, the State put on evidence of an armed robbery appellant participated in approximately one month after the events of this case.

In this subsequent robbery, appellant and another individual, Horace Crowley, went to the back door of Captain D's Seafood Restaurant about 10:30 on the morning of September 20, 1991. When their knock on the locked door was answered by the manager, Crowley put a gun to the manager's head and started backing him up into the restaurant. Appellant then pointed his gun on another employee in the restaurant and told him to get on the floor. As appellant checked to see if the safe was open, the manager bolted for the back door at which time appellant told Crowley to, "Shoot him, shoot that nigger," which Crowley did. Appellant then went back over to the employee, placed the gun behind his head, and asked him where the money was. When appellant was told there was no money, he cocked his gun. Crowley then told appellant to let him live and the two ran out the back door.

After the testimony concerning this robbery, the State called a psychologist, Dr. Grigson, who testified that appellant would be a continuing threat to society. He stated that his professional opinion was based upon his viewing appellant's videotaped confession of the Captain D's robbery. Dr. Grigson also testified that appellant had an antisocial personality disorder which could not be treated.

Finally, the State offered evidence of appellant's juvenile record which included showing possession of cocaine, violating the terms of his probation, and escaping from the Texas Youth Commission. Based upon the deliberateness of the instant offense; the fact that appellant committed an armed robbery less than a month after the commission of this offense; appellant's juvenile record; and the psychiatric testimony, we conclude that the evidence is sufficient to sustain an affirmative finding to the second special issue. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Point of error twenty-one is overruled.

In points six and seven, appellant urges that trial error occurred in the admission of hearsay statements of Tyrone Holden since the statements were hearsay and did not fall into any recognized exception. At trial, a hearing was conducted outside the presence of the jury to determine whether Peterson's testimony as to Holden's statements was ad-

missible. Appellant objected that the statements were hearsay and should not be admitted. The State here responds that the statements were exceptions to the hearsay rule and therefore admissible under two theories: 1) as statements against Holden's penal interests under Tex.R.Crim.Evid. 803(24) [6] and 2) as statements against his "social interests" under the same section—in other words, that the statements would make Holden an object of hatred or ridicule. The trial court allowed the evidence and appellant maintained his objections.

*Statement Against Penal Interest*

■ Throughout his discussion with Peterson, Holden maintained that he was in no way a participant in the activities of his traveling companions; that the only reason he remained was that he needed transportation a few hundred miles back to his home, at which time he would distance himself from the perpetrators. Holden was not subjecting himself to criminal liability by making his exculpatory statements; "mere presence" is not enough to make one a party to a crime. *Estrada v. State,* 846 S.W.2d 332, 336 (Tex. Crim.App.1993).

■ Interpreting the federal counterpart to Texas Rule 803(24) [Fed.R.Evid. 804(b)(3)], the United States Supreme Court said:

> In our view, the most faithful reading of Rule 804(b)(3) is that it does not allow admission of non-self-inculpatory statements, even if they are made within a broader narrative that is generally self-inculpatory.

*Williamson v. United States,* —— U.S. ——, ——, 114 S.Ct. 2431, 2435, 129 L.Ed.2d 476 (1994). Because the person making the statement (Holden) was not inculpating himself, these statements were not admissible as Statements Against Penal Interest as defined by *Williamson.*[7] *Cofield v. State,* 891 S.W.2d 952 (Tex.Crim.App.1994).

*Statement Against "Social" Interest*

■ Rule 803(24) also excepts from the hearsay rule statements which would make the declarant the object of "hatred, ridicule, or disgrace." The State claims that a person accusing another of a crime would be an object of hatred and retaliation and cites *Purtell v. State,* 761 S.W.2d 360 (Tex.Crim. App.1988), *cert. denied,* 490 U.S. 1059, 109 S.Ct. 1972, 104 L.Ed.2d 441 (1989), to support this theory of admission. In *Purtell,* a small town minister told a woman with whom he was having an affair that he had previously had homosexual encounters. This Court held that the statement was not excludable as hearsay because "[a] confession of homosexual conduct, especially of an anonymous encounter in a public restroom, would tend to bring ridicule and disgrace upon a small-town minister."

However, a closer fact situation to that of the present case occurred in *Sills v. State,* 846 S.W.2d 392, 395–397 (Tex.App.—Houston [14th Dist.] 1992, pet. ref'd). In *Sills,* Dennis Chambers gave a written statement to police that he was in Sills' trailer being beaten by one "BoBo" when the victim drove up. When the victim entered the trailer, "BoBo" momentarily stopped beating Chambers and certain verbal accusations were exchanged with the victim. Sills then hit the victim on the head with the gun and "BoBo" turned to continue his abuse of Chambers. As Chambers was being struck again, he heard the gun go off. Chambers was warned that if he told anyone of the occurrences, both he and

---

6. Tex.R.Crim.Evid. 803(24) states:

> The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
>
> \* \* \* \* \* \*
>
> (24) **Statement against interest.** A statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject him to civil or criminal liability, or to render invalid a claim by him against another, or to

make him an object of hatred, ridicule, or disgrace, that a reasonable man in his position would not have made the statement unless he believed it to be true. A statement tending to expose the declarant to criminal liability is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement.

7. In reaching this holding, we do not mean to imply that had the statements inculpated Holden, they would have been admissible.

his family would be killed. Chambers found out later that the victim had died.

During trial, Chambers was called by the State to testify. He was questioned outside the presence of the jury, but refused to answer any questions other than his name and the fact that he was in jail on unrelated charges.[8] The prosecutor informed the court that Chambers refused to testify because someone had threatened to kill his mother if he did. When the jury was recalled, the prosecutor questioned Chambers by reading each sentence of the written statement prefaced by "Isn't it true ..." statements. Chambers refused to agree or disagree with each of the statements, answering simply, "I refuse to answer."

The State argued on appeal that the written statement was properly allowed into evidence as a statement against interest. The appellate court disagreed. As the 14th District Court of Appeals stated:

> The State argues Chambers's statement subjected him to appellant's hatred and retaliation. Logically, it can be argued that any statement made by a declarant against another will subject the declarant to hatred and retaliation by the person or persons the statement implicates. The State does not refer us to any case law that supports this type of broad argument. To be admissible, a statement against interest that makes the declarant the object of hatred, ridicule, or disgrace must be in the context of the declarant's social interests, such as a confession by a small-town minister of homosexual conduct, *Purtell v. State,* 761 S.W.2d 360, 369 (Tex.Crim.App. 1988), *cert. denied,* 490 U.S. 1059, 109 S.Ct. 1972, 104 L.Ed.2d 441 (1989), or a statement by a husband that he was responsible

for an automobile accident whereby his wife became a paraplegic. *Robinson v. Harkins & Co.,* 711 S.W.2d 619, 621 (Tex. 1986). If the State's broad argument was accepted then virtually every statement a declarant made against another would be admissible. We do not find Chambers was subject to hatred, ridicule, or disgrace at the time of making the statement such that his statement was against his interest.

*Sills,* 846 S.W.2d at 397. Such is the case here. Even if a declarant may be the subject of retaliation because of an accusatory statement, it does not necessarily follow that it makes him a subject of hatred, ridicule, or disgrace as envisioned by the rule of evidence. As such, we hold that Holden's statements in the present case were not such as to subject him to hatred, ridicule, or disgrace as contemplated by the rule and were not excepted from the rule prohibiting hearsay. The trial court erred in allowing the statements. Points of error six and seven are sustained.[9]

## III. HARM ANALYSIS

When error is revealed in the proceedings below, Rule of Appellate Procedure 81(b)(2) dictates that we determine whether such error harmed appellant. Unless it can be determined beyond a reasonable doubt that the error made no contribution to the conviction or to the punishment, the judgment must be reversed. As this Court stated in *Harris v. State,* 790 S.W.2d 568, 587–88 (Tex.Crim.App.1989):

> [A] reviewing court in applying the harmless error rule should not focus upon the propriety of the outcome of the trial. Instead, an appellate court should be concerned with the integrity of the process

---

**8.** He did not claim the Fifth Amendment privilege, but simply refused to testify, even under the threat of contempt.

**9.** In points of error eight and nine, appellant claims that admission of Holden's hearsay statement violated his rights under the Confrontation Clause of the federal constitution, as well as article I, § 10 of the Texas Constitution. This Court has recognized the potential problems that may arise when statements of third parties are offered against an accused under Rule 803(24). In *Davis v. State,* we noted that "apart from qualifying as a statement against interest, a third

party's statement implicating the accused may be inadmissible as violative of the accused's rights under the Confrontation Clause." *Davis v. State,* 872 S.W.2d 743, 748 n. 11 (Tex.Crim.App.1994) (*citing Bruton v. United States,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968); *see also Holland v. State,* 802 S.W.2d 696, 699 (Tex.Crim. App.1991). However, because we find that Holden's statement did not qualify as a hearsay exception under Rule 803(24), we need not address appellant's complaints under points eight and nine.

leading to the conviction. Consequently the court should examine the source of the error, the nature of the error, whether or to what extent it was emphasized by the State, and its probable collateral implications. Further, the court should consider how much weight a juror would probably place upon the error. In addition, the Court must also determine whether declaring the error harmless would encourage the State to repeat it with impunity. In summary, the reviewing court should focus not on the weight of the other evidence of guilt, but rather on whether the error at issue might possibly have prejudiced the jurors' decision-making; ....

Accordingly, "[t]he question under Rule 81(b)(2) is not whether the error was so harmful as to require reversal. Rather, the question is whether the State, as beneficiary of the error, can persuade us to a level of confidence beyond a reasonable doubt that the error made no contribution to the affirmative answers to the special issues." *Alba v. State,* 905 S.W.2d 581, 593 (Tex.Crim.App. 1995) (Clinton, J., dissenting); *see also Jones v. State,* 833 S.W.2d 118, 127 (Tex.Crim.App. 1992), *cert. denied,* 507 U.S. 921, 113 S.Ct. 1285, 122 L.Ed.2d 678 (1993).

■ When conducting a harm analysis, we look at the totality of the record. *Griffin v. State,* 779 S.W.2d 431, 433 n. 2 (Tex.Crim. App.1989). As an appellate court, we calculate as much as possible the probable impact of the error on the jury in light of the existence of the other evidence. *Harris,* 790 S.W.2d at 587. In making the analysis, the predominant concern is the error and not whether there is overwhelming evidence to support the defendant's guilt. *See id.* If the court rules that an error is harmless it is in essence asserting that the nature of the error is such that it could not have affected the jury. *Id.*

■ Peterson's testimony as to Holden's statements was the only evidence elaborating on the degree of appellant's involvement in the crime and the apparent degree of control appellant exerted. The State argued that Peterson's testimony as to Holden's statements showed that appellant was a primary actor in the murder; that appellant helped to put the victims in the trunk of the car, drove the car to a secluded location, and shot one of the victims in the head.

For a defendant to be eligible for the death penalty as a party to a crime, the jury must answer the following special issue in the affirmative:

whether the defendant actually caused the death of the deceased or did not actually cause the death of the deceased but intended to kill the deceased or another or anticipated that a human life would be taken.

Tex. Code Crim.Proc.Ann. art. 37.071, § 2(b)(2); *see Enmund v. Florida,* 458 U.S. 782, 102 S.Ct. 3368, 73 L.Ed.2d 1140 (1982) (holding that for purposes of imposing death penalty, defendant's criminal culpability must be limited to his participation in the crime and his punishment tailored to his personal responsibility). Peterson's hearsay testimony was the sole evidence offered by the State in this case which could support an affirmative answer on this special issue. Given that Holden's statements provided the only evidence of appellant's degree of involvement in the murder, we cannot say beyond a reasonable doubt that the erroneous admission of the statements made no contribution to appellant's punishment.

Given our disposition of points of error six and seven, we need not address the remainder of appellant's points of error. The judgment is reversed and the cause is remanded to the trial court for the defendant to answer the indictment.

WHITE, J., concurring in the result.

McCORMICK, P.J., and KELLER and MEYERS, JJ., dissenting.

MANSFIELD, J., not participating.

BAIRD, Judge, concurring.

In points of error six and seven, the Court holds the trial judge erred in admitting the testimony of Robert Louis Peterson which related the hearsay statements of Tyrone Holden. The Court begins its Tex.R.Crim. Evid. 803(24) analysis by determining whether the statements were inculpatory. This analysis is consistent with *Davis v. State,* 872

S.W.2d 743, 747 (Tex.Cr.App.1994) ("The first inquiry under . . . Rule 803(24) is whether the statement tended to expose the declarant to criminal liability."). Utilizing this analysis, the Court holds the statement of Holden was not admissible "because the person making the statement (Holden) was *not inculpating himself.*" *Ante* at 515 [emphasis added]. Because I fear this holding may be misconstrued, notwithstanding n. 7, *ante* at 515, to mean that had Holden inculpated himself, his statement would have been admissible, I write separately to hopefully avoid any future confusion on the admissibility of statements against interest.

The State may never utilize Rule 803(24). Instead, the rule works as a one-way street for the defendant. A defendant may offer statements against interest to establish that another admitted commission of the offense or to establish a defense. *See e.g., Davis,* 872 S.W.2d 743; *and, Cunningham v. State,* 877 S.W.2d 310 (Tex.Cr.App.1994). This is so because due process commands that a defendant must be permitted to establish that the offense for which he is charged was committed by another or that the defendant has a defense to the charged offense.

This is not to say that statements against interest are not admissible when offered by the State. Indeed, such statements are admissible under three separate theories. First, such statements made by the defendant on trial are not hearsay and are admissible. Tex.R.Crim.Evid. 801(e)(2) and Tex. Code Crim.Proc.Ann. art. 38.21.[1] Second, statements made by co-defendants in the course of or furtherance of a conspiracy are not hearsay and are admissible. Tex. R.Crim.Evid. 801(e)(2)(E). *See generally, Denney v. State,* 558 S.W.2d 467, 469 (Tex. Cr.App.1977); *Deeb v. State,* 815 S.W.2d 692 (Tex.Cr.App.1991); *and, Ward v. State,* 657 S.W.2d 133 (Tex.Cr.App.1983). Otherwise, statements against interest made by co-defendants are *not* admissible, *Deeb, supra,* because such statements violate the Confrontation Clause of the Sixth Amendment. *Cruz v. New York,* 481 U.S. 186, 107 S.Ct. 1714, 95 L.Ed.2d 162 (1987); *Bruton v. United States,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968); *and Lee v. Illinois,* 476 U.S. 530, 106 S.Ct. 2056, 90 L.Ed.2d 514 (1986). *See, Davis,* 872 S.W.2d at 748, n. 11.[2] Third, such statements may be used by the State to impeach a witness. Tex.R.Crim.Evid. 612.[3] Consequently, although the State may not utilize Rule 803(24) to offer statements against interest, such statements may nevertheless be admissible.

In the instant case, the statements Holden made to Peterson do not fall within any of

---

**1.** Tex.R.Crim.Evid. 801(e) Statements Which Are Not Hearsay. A statement is not hearsay if:

\* \* \* \* \* \*

(2) Admission by party-opponent. The statement is offered against a party and is (A) his own statement in either his individual or representative capacity or (B) a statement of which he has manifested his adoption or belief in its truth, or (C) a statement by a person authorized by him to make a statement concerning the subject, or (D) a statement by his agent or servant concerning a matter within the scope of his agency or employment, made during the existence of the relationship, or (E) a statement by a coconspirator of a party during the course and in furtherance of the conspiracy.

To the extent *Green v. State,* 840 S.W.2d 394, 411–412 (Tex.Cr.App.1992), indicates the statements of a defendant to a cell-mate were hearsay but admissible under Rule 803(24), it should be disavowed.

Tex.Code Crim.Proc.Ann. art. 38.21 provides:

A statement of an accused may be used in *evidence* against him if it appears that the same was freely and voluntarily made without compulsion or persuasion, under the rules hereafter prescribed.

**2.** *McFarland v. State,* 845 S.W.2d 824, 835 (Tex. Cr.App.1992), should be overruled to the extent it holds non-conspiratorial statements of accomplices are admissible under Rule 803(24).

**3.** Tex.R.Crim.Evid. 612(a) Examining Witness Concerning Prior Inconsistent Statement. In examining a witness concerning a prior inconsistent statement made by him, whether oral or written, and before further cross-examination concerning, or extrinsic evidence of, such statement may be allowed, the witness must be told the contents of such statement and the time and place and the person to whom it was made, and must be afforded an opportunity to explain or deny such statement. If written, the writing need not be shown to him at that time, but on request the same shall be shown to opposing counsel. If the witness unequivocally admits having made such statement, extrinsic evidence of same shall not be admitted. This provision does not apply to admissions of a party-opponent as defined in Rule 801(e)(2). *See,* n. 1, *supra.*

the aforementioned three categories for the admission of such statements by the State. Consequently, the statements constituted inadmissible hearsay. For these reasons I agree that points of error six and seven must be sustained.

With these comments, I join the opinion of the Court.