# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---
## NO. 03-11-00127-CV
---

**In the Matter of L. M. M.**

---
### FROM THE COUNTY COURT AT LAW NO. 1 OF BELL COUNTY
### NO. 68,021, HONORABLE EDWARD S. JOHNSON, JUDGE PRESIDING
---

## M E M O R A N D U M   O P I N I O N

A jury found that appellant L. M. M., a juvenile, had engaged in delinquent conduct, specifically the offense of indecency with a child by contact. *See* Tex. Penal Code Ann. § 21.11(a)(1) (West 2011). The trial court assessed punishment at two years' probation. In three points of error on appeal, appellant asserts that the trial court abused its discretion in (1) not allowing appellant to cross-examine the victim's mother regarding certain matters, (2) permitting the investigating officer to provide expert testimony, and (3) admitting hearsay testimony from the victim's mother in violation of appellant's confrontation rights. We will affirm the trial court's probation order.

## BACKGROUND

The jury heard evidence that on April 24, 2010, appellant, who was 14 years old at the time of the alleged offense, touched S.S., a nine-year-old child, in a sexually inappropriate manner while he was babysitting her. During trial, S.S. testified that on the day in question, she had fallen asleep while she was reading a book. The next thing she remembered was "being carried down

the hall" by appellant, who had a "look on his face" that made S.S. "nervous." According to S.S., appellant was carrying her toward her bedroom, but he stopped in the hallway when S.S. "jumped out of his arms" and "ran to the bathroom," where she remained until appellant left the house shortly thereafter. S.S. testified that she did not remember anything else that appellant did to her. However, she remembered telling her mother, a police officer, and a nurse—each of whom also testified during trial—about what had happened. S.S. provided no further testimony, and defense counsel chose not to cross-examine her.

S.S.'s mother, A.M.G., testified that when she came home from work on the day in question, S.S. told her that her legs "hurt from all the stretches that [appellant] had her doing." A.M.G. asked S.S. if appellant "had her doing exercises." S.S. responded in the affirmative, and A.M.G. then asked her if "she was okay." S.S. "said that she would be" and then "ran off to play with her sisters." However, later that day, S.S. and one of her sisters approached A.M.G. and "asked if [appellant] could please never babysit again." A.M.G. agreed without questioning the children as to why they no longer wanted appellant to babysit them.

The following day, A.M.G. testified, S.S. approached her and asked her "if she could show me what [appellant] had made her do." S.S. then sat down on the floor and "stretched her legs apart as far as she could." A.M.G. immediately asked S.S. if appellant had touched her. According to A.M.G., S.S. "said yes, that he put his hands on her, and she pointed to her genital area." A.M.G. then "asked her if he put anything inside of her." A.M.G. recounted, "She didn't give me an answer. She had a blank stare on her face, and said she didn't know what I was talking about." When A.M.G. asked the question a second time, S.S. "put her fingers on her labial area and said, 'This is

2

what he did.'" A.M.G. added, "I asked her if he had ever touched her legs before and she said no. I asked her if he had ever touched her like this before, and she said no." A.M.G. further testified that S.S. had told her that appellant also had made her "lay on top of him in bed" and "rubbed his fingers back and forth" on her genital area. According to A.M.G., much of S.S.'s description of the incident consisted of S.S. "showing" or demonstrating what appellant had done to her rather than using words. After S.S. had finished describing what appellant had done, A.M.G. reported the incident to the police.

Detective Jeff Wagner of the Harker Heights Police Department responded to the report and was the lead investigator in the case. Wagner testified that he "went out to the scene," "spoke with both the victim and the victim's mother," arranged for a physical exam of the victim to be performed, and scheduled an interview of the victim at the Children's Advocacy Center. Wagner did not testify as to what S.S. had told him or what he had heard her tell others.

Sheila Priori, a sexual assault nurse examiner (SANE) who works at Scott & White Hospital in Bell County, examined the child. Priori's written report of the examination was admitted into evidence, and she described the contents of the report to the jury in detail, including S.S.'s explanation of what had happened to her. Priori also testified that during her physical examination of S.S., she observed a slight abrasion or tear on S.S.'s sexual organ that Priori believed was consistent with S.S.'s description of what had happened.

S.S.'s sister A.G. also testified. A.G. recalled her sister going into her mother's bedroom with appellant and appellant locking the bedroom door. When S.S. and appellant later came out of the bedroom, A.G. testified, S.S. sat down in the living room and watched television

3

while appellant called his mother and asked her to come and pick him up so that he could go to work. According to A.G., appellant left the house shortly before his mother arrived.

Appellant's employer, David Lecroix, testified for the defense. Lecroix testified that he owns a mobile-home park and that appellant assists him in maintaining the park and keeping the facilities clean. According to Lecroix, when appellant came to work that afternoon, he did not act unusual in any way. Finally, appellant testified in his defense. He denied committing the acts of which he was accused.

The jury found that appellant had engaged in delinquent conduct as alleged, and the trial court sentenced appellant to two years' probation as noted above. This appeal followed.

## STANDARD OF REVIEW

Appellant's first and second points of error involve evidentiary rulings by the trial court. We review a trial court's decision to admit or exclude evidence for an abuse of discretion. *Ramos v. State*, 245 S.W.3d 410, 417-18 (Tex. Crim. App. 2008). A trial court abuses its discretion in admitting or excluding evidence only when its decision "is so clearly wrong as to lie outside that zone within which reasonable persons might disagree." *McDonald v. State*, 179 S.W.3d 571, 576 (Tex. Crim. App. 2005) (citing *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1991) (op. on reh'g)). Furthermore, if the trial court's evidentiary ruling is correct on any theory of law applicable to that ruling, it will not be disturbed on appeal. *See De La Paz v. State*, 279 S.W.3d 336, 344 (Tex. Crim. App. 2009).

Appellant's third point of error, although also involving the admission of evidence, specifically alleges a violation of the Confrontation Clause of the United States Constitution. *See*

4

U.S. Const. amend. VI.  Whether the admission of evidence violates the Confrontation Clause is a question of law, and we review such questions de novo.  *See Wall v. State*, 184 S.W.3d 730, 742-43 (Tex. Crim. App. 2006); *Render v. State*, 347 S.W.3d 905, 917 (Tex. App.—Eastland 2011, pet. ref'd).

## ANALYSIS

**Exclusion of defense evidence**

In his first point of error, appellant asserts that the trial court denied him his right to present a defense by restricting his attempt to cross-examine the mother of the victim with the evidence and allegations that her husband had exposed the child to sexually oriented material.  In appellant's view, this evidence would have shown that the victim "fabricated" the allegations.

However, the record reflects that there was no objection by the State to this particular line of questioning and that the trial court allowed it.  During the cross-examination of S.S.'s mother, the following occurred:

Q:        Do you ever recall telling anyone your husband had watched pornographic movies and the girls were sitting there, watching pornographic movies?

A:        I don't believe my husband has anything to do with this case.

The Court:   [A.M.G.], absent an objection from The State, you are required to answer the question directed to you to the best of your ability, please.

A:        When [S.S.] was eighteen months old, I was in the hospital.

The Court:   He didn't ask you that.  He asked you whether or not one thing had happened.  It's a yes or no answer.

5

A:                Yes, at age eighteen months.  And it wasn't a movie.  It was on a computer.

Q:                And that's the only time that you know that your husband was looking at porn on the computer, with the girls present?

A:                To the best of my knowledge.  I mean, do you know something I don't?

Defense counsel then moved on to another line of questioning.  Counsel returned to the subject on re-cross-examination, again without objection from the State or restriction from the trial court:

Q:                The incident with pornography and [S.S.]'s father occurred when she was eighteen months?

A:                Yes.

Q:                When is the last time she's had contact with her father?

A:                She spoke to him on the phone two days ago.

Q:                When is the last time she's seen him physically or been in his care physically?

A:                She hasn't been in his care physically in a long time.

Q:                How old was she when she was last in her father's care?

A:                She was in second grade.

Q:                So seven or eight years of age?

A:                Yes.

Q:                So two years ago?

A:                She was eight, because he baptized her.  And he did not live with us any longer after April, and she had her baptism, so yes, eight.

6

Q:      She was in her father's care, just sitting there without any supervising when she was eight years old?

A:      Correct.  But again, sir, I had a password on my computer, even from him.

Following this testimony, defense counsel again moved on to another line of questioning.  There is nothing in the record to indicate that the trial court restricted appellant's cross-examination on this particular subject matter.

To the extent that appellant may be complaining about other lines of questioning that were restricted by the trial court,[1] we observe that the trial court did sustain the State's objections to proposed questions relating to alleged suicidal threats made by the victim's father in S.S.'s presence and alleged physical (but not sexual) abuse committed by the father against S.S. and her sisters.  However, the trial court would not have abused its discretion in finding such evidence not relevant or, in the alternative, more prejudicial than probative.  *See* Tex. R. Evid. 401, 403.  In a hearing outside the jury's presence, A.M.G. testified that the alleged behavior of the victim's father occurred in 2008 or 2009.  The sexual misconduct committed against the victim occurred in April 2010, when she was no longer in her father's care or custody.  Moreover, there was no allegation that the father had sexually abused his children at any point in time.  Thus, it would not have been outside the zone of reasonable disagreement for the trial court to conclude that the relevance, if any, of the father's alleged actions was substantially outweighed by the danger of

---

[1] We note that appellant's argument on this point does not contain citations to the record or references to specific testimony that was excluded.  Thus, it is difficult to determine from appellant's brief the precise nature of his complaint.  *See* Tex. R. App. P. 38.1(i).

7

unfair prejudice, confusion of the issues, misleading the jury, or by considerations of undue delay and to exclude the testimony for those reasons. *See Irby v. State*, 327 S.W.3d 138, 145 (Tex. Crim. App. 2010) (explaining that trial courts retain "wide latitude" to impose reasonable limits on cross-examination based on concerns about such matters as prejudice, confusion of issues, and questioning that is only marginally relevant). We overrule appellant's first point of error.

**Admission of expert testimony**

In his second point of error, appellant asserts that the trial court abused its discretion in allowing Detective Wagner to testify as an expert. Following S.S.'s testimony, Wagner was recalled by the State and was asked this question: "With all of your experience in this type of case, is it unusual or very much out of the ordinary for a child to give a good outcry and then when it comes time for court, to say they forgot something about the case?" Counsel objected to this question as follows: "Your Honor, at this time I'm going to have to object. Detective Wagner has not been listed as an expert. The question being posed is in the form of one being asked an expert, for an expert answer." The State responded, "Your Honor, my response to that would be that I haven't asked him a question as to his opinion. I've asked him a question as to his experience. He's been a police officer for many years."[2] The trial court overruled the objection, advising the witness, "You may answer the question, Officer Wagner, if based on your experience, you can answer that question." Wagner then answered, "Based upon my experience, it is very likely that a victim,

---

[2] Earlier in his testimony, Wagner had testified that he had been a police officer for twelve years, that for the past five years he had investigated cases involving juveniles, and that "roughly around fifty percent" of his caseload involved sex offenses.

especially depending on age, sex and the offense, to recant or attain amnesia, when testifying about an offense. It's a traumatic experience the child doesn't want to relive." Defense counsel did not object to Wagner's answer at that time. Instead, counsel proceeded to extensively re-cross-examine the witness. Only after completing his cross-examination did counsel object to Wagner's earlier testimony. The trial court overruled the objection and explained to counsel, "It's already been asked and answered without objection."

The State argues that the question posed to Wagner called for lay testimony rather than expert testimony and was therefore permissible. In the State's view, although the question itself was proper, Wagner's answer went "beyond the scope" of the question and that in so doing, Wagner "may have given an expert opinion." However, the State contends that by not immediately objecting to Wagner's testimony, appellant failed to preserve error. In other words, the State believes that because the question itself did not call for impermissible expert testimony, appellant's objection to the question was not sufficient to preserve error. Instead, according to the State, appellant needed to make a timely objection to Wagner's answer. Alternatively, the State argues that even if appellant had preserved error, any error in Wagner's testimony was harmless.

We agree with the State that the trial court would not have abused its discretion in concluding that the question itself did not call for expert testimony. A police officer may testify about opinions based on his personal training and first-hand experiences without being qualified as an expert. *Hollis v. State*, 219 S.W.3d 446, 467 (Tex. App.—Austin 2007, no pet.). Here, the State asked Wagner whether, in his experience, it was "unusual or very much out of the ordinary for a child to give a good outcry and then when it comes time for court, to say they forgot something about

9

the case." The question called for a simple "yes" or "no" answer based on Wagner's experience "in this type of case." The question did not call for Wagner to give his opinion as to the reasons why children recanted, only whether a child's forgetfulness during trial was a usual occurrence that he had observed. "[A]s a general rule, observations which do not require significant expertise to interpret and which are not based on a scientific theory can be admitted as lay opinions if the requirements of Rule 701 are met." *Osbourn v. State*, 92 S.W.3d 531, 537 (Tex. Crim. App. 2002).[3]

To the extent that Wagner may have exceeded the scope of the question and provided impermissible expert testimony in his answer, appellant was required to object immediately following Wagner's answer. *See Neal v. State*, 256 S.W.3d 264, 279 (Tex. Crim. App. 2008); *Ethington v. State*, 819 S.W.2d 854, 858 (Tex. Crim. App. 1991); *Hitt v. State*, 53 S.W.3d 697, 707-08 (Tex. App.—Austin 2001, pet. ref'd). He did not. Therefore, he has failed to preserve error. *See* Tex. R. App. P. 33.1.

Moreover, even if appellant had preserved error, we could not conclude on this record that he was harmed by Wagner's testimony. The erroneous admission of expert testimony is non-constitutional error. *See Coble v. State*, 330 S.W.3d 253, 280 (Tex. Crim. App. 2010). Accordingly, any error must be disregarded unless it affected appellant's substantial rights. *See* Tex. R. App. P. 44.2(b); *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997). A substantial right is affected when the error had a substantial and injurious effect or influence in determining

---

[3] Rule 701 requires that "[i]f the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue." Tex. R. Evid. 701.

the jury's verdict. *Coble*, 330 S.W.3d at 280 (citing *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)). If the improperly admitted evidence did not influence the jury or had but a slight effect upon its deliberations, such error is harmless. *Id.* (citing *Johnson v. State*, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998)). "In making a harm analysis, we examine the entire trial record and calculate, as much as possible, the probable impact of the error upon the rest of the evidence." *Id.* (citing *Morales v. State*, 32 S.W.3d 862, 867 (Tex. Crim. App. 2000); *Miles v. State*, 918 S.W.2d 511, 517 (Tex. Crim. App. 1996)). Factors to consider in our analysis include any testimony or physical evidence admitted for the jury's consideration; the nature of the evidence supporting the verdict; the character of the alleged error and how it might be considered in connection with other evidence in the case; the jury instructions; the State's theory and any defensive theories; closing arguments; voir dire, if applicable; and whether the State emphasized the error. *Motilla v. State*, 78 S.W.3d 352, 355-56 (Tex. Crim. App. 2002). We are also to consider "overwhelming evidence of guilt." *Id.* at 357.

Here, the complained-of testimony was limited to providing a brief explanation for why the victim had difficulty testifying in court. However, the record reflects that the victim's trial testimony was only a small part of the State's case. A much larger part of the State's case was the testimony of the victim's mother and the SANE nurse who had examined the victim. Both the mother and the nurse provided extensive and detailed testimony regarding what S.S. had told them, and their accounts were largely consistent, as was the written SANE report that was admitted into evidence. Additionally, S.S.'s sister provided testimony that corroborated the State's theory that appellant and S.S. were alone in a room together. We also observe that the State did not mention

11

Wagner's challenged testimony in its closing argument. In fact, the only time the State mentioned Wagner at all during its argument was in response to a defense argument that Wagner only listened to "one side of the story." No aspect of Wagner's testimony appears to have been a significant part of the State's case. Therefore, on this record, we could not conclude that any error in admitting the challenged testimony had a substantial and injurious effect or influence in determining the jury's verdict. We overrule appellant's second point of error.

**Confrontation Clause**

In his third point of error, appellant asserts that the trial court violated his right to confrontation by allowing the victim's mother to testify as to what the victim had told her. The State responds that there was no Confrontation Clause violation in this case because the victim testified during trial and was thus subject to cross-examination.

We agree with the State. "The Sixth Amendment's Confrontation Clause provides that, '[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him.'" *Crawford v. Washington*, 541 U.S. 36, 42 (2004) (quoting U.S. Const. amend. VI). The Confrontation Clause prohibits the admission of testimonial statements unless the declarant is not available to testify and the accused had a prior opportunity for cross-examination. *Id*. at 68-69.[4] However, it is well settled that "when the declarant appears for cross-examination at trial, the Confrontation Clause places no constraints at all on the use of [her] prior testimonial

_____

[4] The State does not dispute that the statements that S.S. made to her mother regarding what appellant allegedly did to her are testimonial in nature. *See Michigan v. Bryant*, 131 S. Ct. 1143, 1156 (2011); *Davis v. Washington*, 547 U.S. 813, 822 (2006); *Coronado v. State*, 351 S.W.3d 315, 324-25 (Tex. Crim. App. 2011).

12

statements." *Crawford*, 541 U.S. at 59 n.9; *California v. Green*, 399 U.S. 149, 162 (1970); *see also*

*Sanchez v. State*, 354 S.W.3d 476, 486 n.26 (Tex. Crim. App. 2011) (admission of hearsay testimony

by outcry witness comports with guarantees of Sixth Amendment "because the child declarant

is available for cross-examination at trial"); *Woodall v. State*, 336 S.W.3d 634, 642 (Tex. Crim.

App. 2011) (for Confrontation Clause to be implicated, among other requirements, declarant must

be "absent from trial"). Here, appellant had the opportunity during trial to cross-examine S.S.

concerning her prior statements to her mother, but he chose not to ask her any questions. That

appellant chose not to exercise his right of confrontation does not mean that right was violated. We

overrule appellant's third point of error.

## CONCLUSION

We affirm the order of the trial court.

_____

Bob Pemberton, Justice

Before Chief Justice Jones, Justices Pemberton and Rose

Affirmed

Filed: July 11, 2012

13