COURT OF
APPEALS

                                                    EIGHTH DISTRICT
OF TEXAS

                                                               EL
PASO, TEXAS

 

JERRY SHATAE WRIGHTER,                            )

                                                                              )              
No.  08-99-00109-CR

Appellant,                          )

                                                                              )                    Appeal from the

v.                                                                           )

                                                                              )                
109th District Court

THE STATE OF TEXAS,                                     )

                                                                              )          
of Andrews County, Texas

Appellee.                           )

                                                                              )                 
(TC# CR-3632-R)

                                                                              )

 

 

O
P I N I O N

 

In September 1997,
Joe-Anthony Campos was shot and killed on a remote dirt road in Andrews
County.  Campos, Marcel Dean, and Jerry
Wrighter had driven to the spot and parked. 
Campos and Dean got out of the car to relieve themselves and Dean shot
Campos in the back of the head with a .44 caliber revolver.  Appellant, who was driving, stayed in the
car.








On September 15,
1997, a rancher found Campos=s
decomposed body.  The criminal
investigation led to Dean, who made taped oral statements on October 6, 1997
and October 14, 1997.  Appellant was
arrested on October 6, 1997 in Hobbs, New Mexico and indicted on December 18,
1997 for the murder.  Appellant pleaded
not guilty to the crime and was tried on April 6, 1999 before a jury, who
returned a verdict of guilty and sentenced him to 30 years in prison.

DISCUSSION

Speedy
Trial

The first two
issues raised are that the Appellant was denied a speedy trial.  The Sixth Amendment to the United States
Constitution, as extended to the states through the Fourteenth Amendment, guarantees
the criminally accused the right to a speedy trial.  Klopfer v. North Carolina, 386 U.S.
213, 223-24, 87 S.Ct. 988, 993-94, 18 L.Ed.2d 1, 8 (1967).  Likewise, the Texas Constitution guarantees
the right to a speedy trial.  Tex. Const. art. I, ' 10; Hull v. State, 699 S.W.2d
220, 221 (Tex.Crim.App.1985).  In Texas,
the inquiry as to whether the accused=s
right to a speedy trial has been violated is the same under both the United
States and the Texas constitutions.  Floyd
v. State, 959 S.W.2d 706, 709 (Tex.App.‑‑Fort Worth 1998, no
pet.)  We consider the first two issues
together.

On review we
balance four factors when analyzing the grant or denial of a speedy trial
claim.  Barker v. Wingo, 407 U.S.
514, 530, 92 S.Ct. 2182, 2192, 33 L.Ed.2d 101, 116-17 (1972); Johnson v.
State, 954 S.W.2d 770, 771 (Tex.Crim.App. 1997).  These factors are:  (1) the length of the delay; (2) the reason
for the delay; (3) the defendant=s
assertion of the right; and (4) prejudice to the defendant.  Barker, 407 U.S. at 530; Johnson,
954 S.W.2d at 771.

The length of the
delay is first.  See Barker, 407
U.S. at 530-31, 92 S.Ct. At 2191.  A
finding of a Apresumptively
prejudicial@ delay is
a necessary precursor to inquiry into the remaining Barker factors.  Doggett v. United States, 505 U.S.
647, 651-52, 112 S.Ct. 2686, 








2690-91, 120 L.Ed.2d 520 (1992), citing
Barker, 407 U.S. at 530‑31. 
Texas courts have generally found a delay beyond eight months to be
presumptively prejudicial, thus triggering further analysis of speedy trial
claims.  See Harris v. State, 827
S.W.2d 949, 956 (Tex.Crim.App. 1992); Thompson v. State, 983 S.W.2d 780,
783 (Tex.App.--El Paso 1998, pet. ref=d).

The length of
delay is measured from the date the defendant is arrested or formally
accused.  United States v. Marion,
404 U.S. 307, 313, 92 S.Ct. 455, 459, 30 L.Ed.2d 468 (1971);  Harris, 827 S.W.2d at 956.  Appellant was arrested on October 6, 1997,
and he was tried on April 6, 1999.  The
State concedes that a year and six-month delay triggers an analysis of the
remaining Barker factors.  Upon a
finding that a presumptively prejudicial delay has occurred, the State bears
the initial burden of justifying the delay. 
Emery v. State, 881 S.W.2d 702, 708 (Tex.Crim.App. 1994).  The primary burden is on the State and the
trial courts to ensure that defendants are afforded their right to a speedy
trial.  Chapman v. Evans, 744
S.W.2d 133, 136-37 (Tex.Crim.App. 1988). 
While intentional prosecutorial delay weighs heavily against the State,
more Aneutral@ reasons for delay such as negligence
or crowded court dockets are weighed less heavily against the State.  Barker, 407 U.S. at 531, 92 S.Ct. At
2192.

The record
reflects that the case was set for trial on three dates:  July 14, 1998, August 18, 1998, and April 6,
1999.  On July 1, 1998, the State sought
and was granted a continuance of the July 14, 1998 setting due to vacation
plans of a forensic expert witness.  It
appears from the record that the trial date was reset to August 18, 1998.  Appellant asserts that the State received a
second continuance of that setting; however, the record is most opaque as to
what happened to that setting.  We do
note that at the pretrial hearing which took place immediately before the trial
began, the State seemed to acquiesce to the contention that the State was given
a second continuance in August 1998. 
Nevertheless, it does not appear and Appellant does not claim that there
was any deliberate attempt by the State to delay the trial.








The State
proclaims that most of the delay was caused by the pretrial tactics and motions
filed by the defendant.  These included
discovery requests and other pretrial rulings, a change of venue, suppression
of evidence motion, three speedy trial motions, and repeated efforts to obtain
a bond.  While some of the defensive
pleading were pro forma, we fail to see how they could be considered dilatory
and note that hearings and rulings were made on a majority of the defense=s pleadings.  There is, lastly, a seemingly vainglorious
argument that except for the brief time that the forensic expert was on
vacation, the State had always been prepared to proceed.  We will simply note that the record reflects
otherwise.  This factor weighs against
the State.

Under the third Barker
factor, the defendant must assert or demand his right to a speedy trial.  See Barker, 407 U.S. at 528-29, 92
S.Ct. At 2191.  The reviewing court may
consider the Afrequency
and force of the objections@
to the delay.  See id. at 529, 92
S.Ct. at 2191.  Appellant points out that
he filed two motions for speedy trial on April 21, 1998 and August 20, 1998,
respectively.








The record
reflects nothing to show that Appellant asserted his right to a speedy trial
during the months between the filing of his motion for a speedy trial in April
and August 1998 and the trial court=s
setting of the trial in February 1999. 
Between April and August, Appellant sought a reduction in bail and filed
a Motion to Propound Written Jury Questionnaire to the Venire in Advance of
Trial.  Appellant=s
only action after filing the motion for a speedy trial in August was to file
more discovery motions and a request for a transcript.  Appellant did not bring the motions for
speedy trial to the trial court=s
attention until the day of his trial. 
While Appellant made timely and repeated assertions, they are undercut
by his failure to vigorously pursue the assertions, and because he waited until
trial to pursue the assertions, this factor must weigh at least slightly
against Appellant.

Finally, a
defendant has the burden to prove some prejudice, although actual prejudice is
not needed.  See State v. Munoz,
991 S.W.2d 818, 826 (Tex.Crim.App. 1999). 
The last Barker factor is considered in the light of interests
the speedy trial right is designed to protect: 
(1) preventing oppressive pretrial incarceration; (2) minimizing anxiety
and concern of the accused; and (3) limiting the possibility that the defense
will be impaired.  See Barker, 407
U.S. at 532-33.  The mere passage of time
is however not prejudice and will not constitute the denial of speedy
trial.  See Lott v. State, 951
S.W.2d 489, 495 (Tex.App.--El Paso 1997, pet. ref=d).  In Munoz, the Court held that
defendant Munoz suffered no prejudice where he was incarcerated for seventeen
months prior to trial, asserted at a pretrial hearing that he experienced
emotional harm, and had memory-loss which impaired his defense.  See Munoz, 991 S.W.2d at 826-29. 

There was no
evidence presented at the hearing on the motion--the defense simply maintained
that Appellant had suffered incarceration and the anxiety and concern
occasioned by such.  While the trial
court was not favored by any argument from the State, on appeal the State
correctly points out that apart from Awhat
would be expected from ordinary and inevitable pretrial incarceration,@ no other evidence was produced by the
defendant.  See Munoz, 991 S.W.2d.
at 828.  The defendant failed to meet his
burden of showing prejudice and this factor must weigh against him.

Comparing the
respective weights of the Barker factors, we conclude by a narrow margin
that Appellant has failed to demonstrate that he was denied his constitutional
rights to a speedy trial.  Issues One and
Two are overruled.

 








Statement
Against Penal Interest

Issues Three
through Six deal with the out-of-court statements of Marcel Dean made to police
after his arrest, offered by the State to show Appellant=s
guilt.  At trial, Appellant objected to
their admission on the grounds that they were hearsay and that their admission
would violate federal and state Confrontation clauses.  The State made no argument, nevertheless, the
trial court overruled the defense objection and admitted the tape recordings
and written transcripts in their entirety.

On appeal, the
State argues that Appellant waived his right to assert those claims, and
alternatively, that Dean=s
statements were admissible as statements against penal interest under Texas
Rule of Evidence 803(24).  We find that
with the exception of Issue Six, Appellant has preserved his claims.  He has waived the sixth point of error
because he raises Tex.Code Crim.
Proc.Ann. art. 1.25 (Vernon 1977), for the first time on appeal.  See Davila v. State, 930 S.W.2d 641,
650 (Tex.App.--El Paso 1996, pet. ref=d).








We review the
trial court=s
decision to admit a statement under Rule 803(24) under an abuse of discretion
standard.  See Dewberry v. State,
4 S.W.3d 735, 751 (Tex.Crim.App. 1999). 
We will disturb the judgment only when the trial court=s decision falls outside the zone of
reasonable disagreement.  See
Montgomery v. State, 810 S.W.2d 372, 391 (Tex.Crim.App. 1991).  A statement against interest is a statement
which when made tends to subject the declarant to criminal liability, and which
a reasonable person in the declarant=s
position would not have made unless he believed it to be true.  See Tex.R.Evid.
803(24); Burks v. State, 876 S.W.2d 877, 904-05 (Tex.Crim.App.
1994).  For a statement to be admissible
under Rule 803(24), the trial court must determine two issues:  (1) whether the statement in question tends
to expose the declarant to criminal liability and (2) whether there are
corroborating circumstances that clearly indicate the trustworthiness of the
statement.  See Dewberry, 4
S.W.3d at 751; Cofield v. State, 891 S.W.2d 952, 955 (Tex.Crim.App.
1994).  The party seeking admission has
the burden of producing corroborating evidence to prove the trustworthiness of
the statement.  Cofield, 891
S.W.2d at 955.  The trial court should
consider the following factors when ruling on the statement against interest
exception:  (1) whether the declarant=s guilt is inconsistent with the guilt
of the defendant; (2) whether the declarant was so situated that he might have
committed the crime; (3) the timing of the declaration; (4) the spontaneity of
the declaration; (5) the relationship between the declarant and the party to
whom the statement was made; and (6) the existence of independent corroborative
facts.  Dewberry, 4 S.W.3d at 751.

To be admissible
against the accused as a statement against penal interest, a declarant=s out-of-court statement inculpating
the accused must be truly self-inculpatory as well.  Miles v. State, 918 S.W.2d 511, 515
(Tex.Crim.App. 1996), citing Williamson v. United States, 512
U.S. 594, 600-01, 114 S.Ct. 2431, 129 L.Ed.2d 476 (1994).  Whether a statement is in fact against the
interest of the declarant must be determined from the circumstances of each
case.  Cofield, 891 S.W.2d at 956;
Ramirez v. State, 987 S.W.2d 938, 944 (Tex.App.--Austin 1999, no pet.).








In the present case,
Appellant contends that Dean=s
statements are not against penal interest because Dean admitted to shooting
Campos in self-defense, therefore the statement was an attempt to exculpate
himself.  Rule 803(24) does not allow
admission of non‑self‑inculpatory statements, even if they are made
within a broader narrative that is generally self‑inculpatory.   Miles, 918 S.W.2d at 515.  Appellant urges this Court to apply the
reasoning in Miles to this case, however, we note that the circumstances
in that case are distinguishable.  In Miles,
the declarant maintained that he was in no way a participant in the crimes
committed, that he only remained with appellant because he needed
transportation to go back home, and that he was merely present at the scene,
not a party to the crime.  Miles,
918 S.W.2d at 515.  The Miles
Court found that the declarant had not inculpated himself, therefore his
statements were not admissible as statements against penal interest under Rule
803(24).  Id.  Here, Dean stated that he shot Campos.  Dean did not deny that he committed the
murder.  Though Dean asserted a defense
theory, his statement did not seek to minimize his participation, shift the
blame to Appellant, nor did he seek to curry favor with authorities.  See Zarychta v. State, 961 S.W.2d 455,
458 (Tex.App.--Houston [1st Dist.] 1997, pet. ref=d).  Rather, Dean=s
statements exposed him to prosecution for criminal liability, such that a
reasonable person in his position would not have made the statement unless he
believed it to be true.  See Tex.R.Evid. 803(24).  Dean=s
statements were sufficiently against his interest as to be reliable.  See Dewberry, 4 S.W.3d at 751; Cofield,
891 S.W.2d at 955.  The first part of the
exception test is therefore met.








We also find that
there was sufficient independent corroborative evidence to support a finding as
to the trustworthiness of Dean=s
statements.  At trial, seven separate
witnesses testified consistently with Dean=s
statements.  Officer Craig testified that
the victim=s body
had been found at a country road and that he discovered bullet cartridges on
the ground behind Palmer=s
house.  Officer Antonio De la Fuente
testified that he received reports of a stolen vehicle that Dean had borrowed
and a stolen gun from Dean=s
grandmother.  Tasha Moore stated that
Dean was upset about his wife and came to her house with a black male in a
pale-colored car.  Nicole Palmer
testified that Dean and Appellant came to her house, hung out with her husband
then returned later, parking the car in the backyard.  Ms. Palmer also testified that she saw
Appellant trying to sell a gun.  Orlando
Barr and John Holmes each testified that Dean stated Appellant was present when
Dean shot Campos.  Holmes also testified
that Appellant said that he drove to and from the murder scene, was present
when Dean shot Campos, and that he later sold the weapon used to commit the
murder.  Sonny Wrighter testified that
Appellant called him to say that Dean had just shot someone and that he had
been in the car at the time of the shooting. 
Further, Dr. Karen Ross, who performed the autopsy of the victim,
testified that Campos died from a gunshot wound to the head.  Recovered bullet fragments from the autopsy
were tested by Robert Poole, a firearms expert, and confirmed to be the same
type of bullets as those found by Officer Craig behind Palmer=s house.  We hold that the trial court=s ruling on the admissibility of Dean=s statements under Rule 803(24) was not
outside the zone of reasonable disagreement and therefore was not an abuse of
discretion.  

Appellant also
asserts, however, that the admission of Dean=s
statements violated his right to confront witnesses testifying against him
under Confrontation Clause of the Sixth Amendment, applicable to the states
under the Fourteenth Amendment of the United States Constitution, Article I,
section 10 of the Texas Constitution, and Article 1.05 of the Texas Code of
Criminal Procedure.








Federal analysis
of the right to confront does not necessarily apply to the state constitutional
guarantees, and each claim should be analyzed separately.  See Heitman v. State, 815 S.W.2d 681,
682 (Tex.Crim. App. 1991).  However, an
appellant waives the separate analysis of the federal and state constitutional
rights, where the appellant fails to point out any meaningful distinctions
between the two.  See Lagrone v. State,
942 S.W.2d 602, 614 (Tex.Crim.App. 1997). 
In his brief, Appellant asserts that Texas provides Aprobably even greater protection@ than the federal constitution, but
fails to make a distinction between the federal and the state right nor does
Appellant offer any authority in support of his argument.  An appellant Amust
present argument and authority convincing us that his assertions of greater
protection are in fact correct.  . .
.  Without such argument or authority,
not only is his argument unconvincing, it is also inadequately briefed.@ 
Sonnier v. State, 913 S.W.2d 511, 520 (Tex.Crim.App. 1995).  We reach only Appellant=s federal claim.








In all criminal
prosecutions, both state and federal, the accused has a right, guaranteed by
the Sixth and Fourteenth Amendments to the United States Constitution Ato be confronted with the witnesses
against him.@  U.S.
Const. amend. VI; Lilly v. Virginia, 527 U.S. 116, 123, 119 S.Ct.
1887, 1893, 144 L.Ed.2d 117 (1999)(plurality opinion).  AThe
central concern of the Confrontation Clause is to ensure the reliability of the
evidence against a criminal defendant by subjecting it to rigorous testing in
the context of an adversary proceeding before the trier of fact.@ 
Maryland v. Craig, 497 U.S. 836, 845, 110 S.Ct. 3157, 3163, 111
L.Ed.2d 666 (1990).  The admission of
hearsay evidence amounts to a violation of the Confrontation Clause unless the
evidence falls within a Afirmly
rooted hearsay exception,@
which for the purposes of the Confrontation Clause reliability can be
inferred.  Idaho v. Wright, 497
U.S. 805, 816-17, 110 S.Ct. 3139, 111 L.Ed.2d 638 (1990).  If a hearsay statement is admitted under a
hearsay exception which cannot be considered Afirmly
rooted,@ it must
contain particularized guarantees of trustworthiness.  Id.; see Ohio v. Roberts, 448
U.S. 56, 66, 100 S.Ct. 2531, 2539, 65 L.Ed.2d 597 (1980).  The Texas Court of Criminal Appeals has held
that a statement against penal interest is a firmly rooted exception to the
hearsay rule where an out-of-court statement was sufficiently against the
declarant=s own
interest to be reliable.  Dewberry,
4 S.W.3d at 754; Guidry v.State, 9 S.W.3d 133, 149-150 (Tex.Crim.App.
1999).

In the present
case, Dean=s
out-of-court statements fall within a hearsay exception which is firmly rooted
and are sufficiently against Dean=s
own interest to be reliable.  Further,
the facts of this case are distinguishable from those in Lilly v. Virginia,
in which Justice Stevens=
plurality opinion held that an accomplice=s
confession inculpating or shifting blame to the defendant was not within a Afirmly rooted@
exception to the hearsay rule for the purpose of the Confrontation Clause.  Lilly, 527 U.S. at 133-34.  Unlike Lilly, Dean never tried to
shift the blame for the murder on to Appellant. 
In fact, Dean repeatedly stated that he wielded the gun and fired the
shot that killed Campos.  The admission
of Dean=s
statements did not violate the federal Confrontation Clause, therefore we
overrule Appellant=s Issues
Three, Four, Five, and Six with respect to this claim.

Sufficiency
of the Evidence

Appellant
challenges the legal and factual sufficiency of the evidence on appeal.   Therefore, we will recite the pertinent
facts adduced at trial in this case.  

Dean and Appellant
were living and working in Hobbs, New Mexico. 
Dean=s wife
had left him and gone to Andrews, Texas. 
Upset by the news, Dean made plans to go to Andrews, and Appellant
agreed to go with him.  On September 8,
1997, Dean stole an M90 rifle, a .44 caliber handgun, and ammunition from his
grandmother=s
house.  The two men promptly sold the
rifle for crack cocaine and money to rent a car.








When Dean and
Appellant arrived in Andrews, they looked for Dean=s
wife at her relatives=
homes, but did not find her.  Dean and
Appellant then stopped at the home of Tasha Moore, Dean=s
sister-in-law, and her husband Joe-Anthony Campos in the late afternoon of September
9, 1997.  When Moore denied knowing where
his wife was, and when Dean left the house, Campos followed him.  They talked in front of the house smoking
crack, then Dean and Campos got into the car with Appellant.  As Appellant drove, the conversation between
Campos and Dean grew into an argument, and Dean threatened to kill Campos.  Dean told Appellant to drive out to the
country, and they stopped for a restroom break.

Appellant remained
in the car when Dean and Campos got out to relieve themselves.  Dean had taken the handgun, and when Campos
turned, Dean shot Campos.  Dean claimed
that he shot Campos twice, once in the shoulder and in the head.  Appellant was still in the car and yelled for
Dean to get inside, then they drove away from Campos, who was still moving.

The two men drove
to either Terrill, Texas or straight to Hobbs, where Appellant sold the murder
weapon to an unknown man at a motel. 
They returned to Palmer=s
house to park the car in the backyard, out of sight, and Dean dropped the
cartridges for the gun in the grass by the car. 
They also telephoned several people to ascertain if the murder had been
discovered.

Legal
Sufficiency








In Issue Nine,
Appellant challenges the legal sufficiency of the evidence to sustain his
conviction, because Dean=s
and Nicole Palmer=s
statements were inadmissible as hearsay, no physical or scientific evidence
linked him to the murder, and no testimony identified him at the scene of the
murder.  In reviewing a legal sufficiency
of the evidence issue, this Court examines all of the evidence in a light most
favorable to the verdict in order to determine whether any rational trier of
fact could find the essential elements of the crime as alleged beyond a
reasonable doubt.  See Dewberry, 4
S.W.3d at 740; Lyon v. State, 885 S.W.2d 506, 516 (Tex.App.--El Paso
1994, pet. ref=d).  Our duty is not to reexamine the evidence and
impose our own judgment as to whether the evidence establishes guilt beyond a
reasonable doubt, but only to determine if the findings by the trier of fact
are rational.  See Lyon, 885
S.W.2d at 516-17.  Any inconsistencies in
the evidence are resolved in favor of the verdict.  See Matson v. State, 819 S.W.2d 839,
843 (Tex.Crim.App. 1991).  This standard
of review applies equally to both direct and circumstantial evidence
cases.  See Geesa v. State, 820
S.W.2d 154, 161 (Tex.Crim.App. 1991), overruled in part on other grounds by,
Paulson v. State, 28 S.W.3d 570, 571 (Tex.Crim.App. 2000); Garcia v.
State, 871 S.W.2d 279, 280 (Tex.App.--El Paso 1994, no pet.).  Evidence is sufficient to convict under the
law of parties where the defendant is physically present at the commission of
the offense and encourages its commission by words or other agreement.  Ransom v. State, 920 S.W.2d 288, 302
(Tex.Crim.App. 1994).

Besides Dean=s confession, the State presented testimony
from witnesses and scientific evidence. 
In his confession, Dean told the police that he and Appellant drove to
Andrews to find his wife, after Appellant told him that his wife was planning
to leave Andrews.  Appellant knew that
Dean had a handgun and ammunition, was upset and had been drinking, and Adoing dope.@  Appellant was in the car as Dean and Campos
argued and heard Dean threaten to kill Campos. 
After Dean shot Campos, Appellant drove off with Dean and did not
attempt to aid Campos, who was still moving. 
Afterwards, Appellant sold the murder weapon for Dean and even bragged
about the murder to others, including Donald Palmer.  Dean told substantially the same story to
Orlando Barr and John Holmes in the jail, and Appellant also told Holmes that
he was at the murder and sold the gun.








Tasha Moore
testified that she saw a black man in the car that Dean drove to her home.  Nicole Palmer, Donald Palmer=s wife, confirmed that Dean and
Appellant came to her home then returned the same day, parking the car in the
back, and made several phone calls from her home.  She also said that shortly afterwards, she
heard Appellant talk about a gun used to murder someone and saw him trying to
sell a gun.  Sonny Wrighter testified his
son, Appellant, called because Dean had shot someone while he was in the back
of a car and wanted money and a ride back home. 
Kathryn Clifton testified that Appellant told her he called home from a
payphone in Andrews to try to get home. 
Dr. Neal Haskell, a professor of forensic science, testified that by the
presence of fly maggots and their colony development in Campos= body, the murder occurred in the
evening of September 9, 1997.

A rational jury
could have found that Appellant was present at the murder of Campos and
assisted or encouraged Dean in the commission of the murder.  We overrule Issue Nine.

Factual
Sufficiency

In Issue Ten,
Appellant also challenges the factual sufficiency of the evidence.  In his brief, Appellant repeats the same
arguments as for his point on legal sufficiency.  The State argues that this is improper
briefing of the point, which should be overruled without discussion according
to McDuff v. State, 939 S.W.2d 607, 613 (Tex.Crim.App. 1997).  Unlike the appellant in that case, Appellant
states a legal standard, presents supporting argument, and thus has not waived
his factual sufficiency claim.[1]








In examining the
factual sufficiency of the evidence, this Court views all evidence, not just
that favorable to the verdict, and only reverses the conviction if it is so
against the great weight and preponderance of the evidence as to be manifestly
wrong or unjust.  See Taylor v. State,
921 S.W.2d 740, 746 (Tex.App.--El Paso 1996, no pet.).  An appeals court does not substitute its
conclusions for those of the jury, and it is the jury=s
province to resolve conflicts in the testimony and judge the weight and/or
credibility of a witness=s
testimony.  See Taylor, 921 S.W.2d
at 746.

To contradict the
evidence favorable to the verdict, Appellant offers Dean=s
statements to Detective William Craig, his own statement to Detective Johnny
Gonzales, Craig=s
testimony in court, and the scientific evidence and testimony offered.  Throughout his statement, Dean maintained
that he, not Appellant, shot Campos. 
Mary Wrighter, Appellant=s
mother, testified that Dean called her and told her that Appellant had Anothing to do with this.@

Appellant also
asserted that he had not been in Andrews with Dean.  He explained to Officer Gonzales that on
September 9, 1997, except for a period of about an hour when Dean had left him
behind, they had driven around to Lubbock, Big Spring, and Dallas for most of
the day because they had been lost while on their way to Terrill, Texas.  Appellant also negated his father=s testimony that he had called him to
request money and a ride home because Dean had shot someone.

No physical
evidence directly connected Appellant to the murder.  Tasha Moore testified that when Dean came to
her home, she saw a black man sitting in a pale, medium sized car parked in
front of her house, but could not positively identify Appellant as that
man.  Officer Craig testified that he
found tire tracks at the scene, comparable but not matchable to the car that
Dean and Appellant had been seen in.








Appellant=s evidence either directly conflicts
with or undermines the State=s
evidence, but the jury is the trier of fact, and they alone are charged with
resolving conflicts in the evidence and weighing the credibility of it.  The evidence presented by Appellant is not
such that the verdict is so against the great weight of the evidence as to be
manifestly wrong or unjust.  We overrule
Issue Ten.

Jury
Charge

In Issue Seven,
Appellant contends that the trial court erred in denying his request for an
application paragraph on the law of the parties in the jury charge.  We review an error in a charge in two
steps.  First, we determine if an error
exists in the charge.  See Almanza v.
State, 686 S.W.2d 157, 171 (Tex.Crim.App. 1984); Washington v. State,
930 S.W.2d 695, 698 (Tex.App--El Paso 1996, no pet.).  In determining the existence of the error, we
look at the charge as a whole and not as a series of isolated statements or
parts of the charge standing alone.  See
Holley v. State, 766 S.W.2d 254, 256 (Tex.Crim.App. 1989); Washington,
930 S.W.2d at 698.  Reversible error
occurs only when a jury charge contains absolutely no reference to the law of
the parties.  See Chatman v. State,
846 S.W.2d 329, 331 (Tex.Crim.App. 1993). 
Second, we determine if sufficient harm resulted from the error to
require reversal.  See Almanza,
686 S.W.2d at 171; Washington, 930 S.W.2d at 698.  We hold that the jury charge adequately
applied the law of the parties to the facts. 


The trial court
properly stated the law of the parties in the abstract paragraphs and applied
the law:








Now, if you believe
from the evidence beyond a reasonable doubt that the defendant, JERRY SHATAE
WRIGHTER, on or about the 15th day of September, 1997, in Andrews,
County, Texas, did then and there, acting with intent to promote or assist the
commission of the offense charged, solicit, encourage, direct, aid, or attempt
to aid Marcell Deon Dean to intentionally or knowingly cause the death of
Joe-Anthony T. Campos by shooting the said Joe-Anthony T. Campos with a deadly
weapon, to-wit:  a firearm, you will find
the defendant guilty.

 

The trial court also instructed the
jury in the immediately preceding paragraph of the application paragraph that A[m]ere presence alone will not
constitute one a party to an offense.@  The trial court adequately applied the law of
the parties to the facts when it tracked the language of the statute in the
charge.[2]  See Mayfield v. State, 716
S.W.2d 509, 516 (Tex.Crim.App. 1986), overruled in part on other grounds by,
Solomon v. State, 49 S.W.3d 356, 368 (Tex.Crim.App. 2001).  There is no error in the charge, and we
overrule Issue Seven that the trial court did not adequately apply the law of
the parties to the facts.

Corroboration
of Accomplice Testimony

In Issue Eight,
Appellant asserts that Dean=s
statements are the testimony of an accomplice and must be corroborated by other
evidence tending to connect him with the offense committed under Tex.Code Crim.Proc.Ann. art. 38.14
(Vernon 1979).  We disagree.  The Court of Criminal Appeals restricted the
word Atestimony@ in Article 38.14 to the definition Aadduced in open court by live witnesses
under oath.@  Bingham v. State, 913 S.W.2d 208, 210
(Tex.Crim.App. 1995).  The court quoted
with approval from Black=s
Law Dictionary that testimony is: 

Evidence given by a competent witness
under oath or affirmation; as distinguished from evidence derived from
writings, and other sources.  Testimony
is particular kind of evidence that comes to tribunal through live witnesses
speaking under oath or affirmation in presence of tribunal, judicial, or
quasi-judicial.

 








Id. at 210.  Appellant=s
Issue Eight that Dean=s
statement had to be corroborated under Article 38.14 as an accomplice testimony
is overruled.

The judgment of
the trial court is affirmed.

 

 

 

February
13, 2003

DAVID WELLINGTON
CHEW, Justice

 

Before Panel No. 1

Larsen, McClure, and Chew, JJ.

 

(Do Not Publish)











[1]
In McDuff, the Court held that the appellant waived his factual
sufficiency claim by insufficient briefing, since the appellant merely stated
an incomplete standard of review and presented no arguments on his point.  McDuff, 939 S.W.2d at 613.  





[2]
AA person is criminally responsible for
an offense committed by the conduct of another if . . . acting with intent to
promote or assist the commission of the offense, he solicits, encourages,
directs, aids, or attempts to aid the other person to commit the offense . . .
.@ Tex.Pen.Code
Ann. '
7.02(a)(2)(Vernon 1994).