COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.
2-05-021-CR

 

 

GUSTAVO RODRIGUEZ                                                         APPELLANT

 

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

        FROM
CRIMINAL DISTRICT COURT NO. 3 OF TARRANT COUNTY

 

                                              ------------

 

                                MEMORANDUM
OPINION[1]

 

                                              ------------








Appellant Gustavo Rodriguez
appeals his conviction for possession of more than 400 grams of cocaine with
intent to deliver.  After convicting
Appellant of the charged offense, the jury assessed his punishment at forty-seven
years= confinement and a $40,000 fine. 
The trial court sentenced Appellant accordingly.  Because we hold that the trial court abused
its discretion in not granting Appellant=s motion to suppress, we reverse and remand.

FACTUAL BACKGROUND

On November 24, 2003, Officer
Bruce Blaisdell and Officer Steven Hall, along with other members of the Fort
Worth police force, were involved in conducting surveillance of Eduardo Cantu,
Appellant=s
uncle.  The officers  followed Cantu to 4316 Goddard Street in Fort
Worth.  Officer Blaisdell testified at
the suppression hearing that Cantu went inside a detached garage in the back of
the house and returned to his car about forty-five minutes later, carrying a
package that he placed in his car.

Officer Blaisdale followed
Cantu=s vehicle for a few blocks, until he saw Cantu fail to use a turn
signal when he turned.  Officer Blaisdell
contacted an officer in a marked police car and requested that the officer
conduct a traffic stop of Cantu, which he did. 
The officer obtained Cantu=s consent to search his vehicle, and the officer recovered
approximately three kilograms of cocaine from his car.  Cantu informed officers that more cocaine was
located at the house on Goddard Street. 
Based on this information, the officers sought a search warrant for the
house on Goddard Street.








Sergeant Hall went to the
Goddard Street address to observe the house while other officers obtained the
search warrant.  While there, he heard
what he recognized as Atool noises,
metal on metal banging@ that
appeared to be coming from the garage area behind the house.  Sergeant Hall and Lieutenant J.T. Morgan
approached the detached garage, where the overhead door was partially
open.  Sergeant Hall raised the garage
door and saw Appellant and two other men inside.

Sergeant Hall and Lieutenant
Morgan identified themselves as police officers and asked the men to have a
seat.  Approximately an hour later,
Officer Jerry Cedillo called Sergeant Hall and informed him that the magistrate
had signed the warrant.  The officers
conducted a search of the detached garage, found forty-three kilograms of
cocaine, and arrested Appellant.  Officer
Cedillo later arrived at the scene and obtained a written statement from
Appellant.

MOTION TO SUPPRESS

In his second issue,
Appellant contends that the trial court erred in overruling his motion to
suppress the evidence because the search warrant was obtained without probable
cause.

1.  Standard of Review








We review a trial court=s ruling on a motion to suppress evidence under a bifurcated standard
of review.  Carmouche v. State, 10
S.W.3d 323, 327 (Tex. Crim. App. 2000); Guzman v. State, 955 S.W.2d 85,
89 (Tex. Crim. App. 1997).  In reviewing
the trial court=s decision,
we do not engage in our own factual review. 
Romero v. State, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990); Best
v. State, 118 S.W.3d 857, 861 (Tex. App.CFort Worth 2003, no pet.).  The
trial judge is the sole trier of fact and judge of the credibility of the
witnesses and the weight to be given their testimony.  State v. Ross, 32 S.W.3d 853, 855
(Tex. Crim. App. 2000); State v. Ballard, 987 S.W.2d 889, 891 (Tex.
Crim. App. 1999).  Therefore, we give
almost total deference to the trial court=s rulings on (1) questions of historical fact and (2) application‑of‑law‑to‑fact
questions that turn on an evaluation of credibility and demeanor.  Johnson v. State, 68 S.W.3d 644, 652‑53
(Tex. Crim. App. 2002); State v. Ballman, 157 S.W.3d 65, 68 (Tex. App.CFort Worth 2004, pet. ref=d).  But when the trial court=s rulings do not turn on the credibility and demeanor of the
witnesses, we review de novo a trial court=s rulings on mixed questions of law and fact.  Estrada v. State, 154 S.W.3d 604, 607
(Tex. Crim. App. 2005); Johnson, 68 S.W.3d at 652‑53.

When reviewing a trial court=s ruling on a mixed question of law and fact, the court of appeals may
review de novo the trial court=s application of the law of search and seizure to the facts of the
case.  Estrada, 154 S.W.3d at
607.  When there are no explicit findings
of historical fact, the evidence must be viewed in the light most favorable to
the trial court=s
ruling.  Id.








We must uphold the trial
court=s ruling if it is supported by the record and correct under any theory
of law applicable to the case even if the trial court gave the wrong reason for
its ruling.  Armendariz v. State,
123 S.W.3d 401, 404 (Tex. Crim. App. 2003), cert. denied, 541 U.S. 974
(2004); Ross, 32 S.W.3d at 856; Romero, 800 S.W.2d at 543.  

2.  Sufficiency of the Search Warrant Affidavit

Appellant asserts that the
warrant does not state with sufficient specificity the acts that constitute
probable cause to search because the officer merely states in his conclusion
that he has reason to believe that there are large amounts of cocaine at the
Goddard Street premises, but he never states facts supporting that belief.  The warrant affidavit provides,








I,
Fort Worth Police Narcotic Officer J. Cedillo #3014 do solemly swear that
heretofore, on or about the 24th day of November, 2003, in the City of Fort
Worth, Tarrant County, State of Texas, Eduardo Cantu, a Hispanic male, date of
birth 05/02/69, Gustavo Rodriguez, a Hispanic male date of birth 11/25/65,
Elpidio Becerril, a Hispanic male date of birth 11/25/65 and Jose M. Coronado,
a Hispanic Male date of birth 02/16/79 then and there unlawfully possess and
does at this time unlawfully possess a controlled substance namely Cocaine at
4316 Goddard, in the City of Fort Worth, Tarrant County, State of Texas.  This residence is described as a single story
family dwelling.  The residence is
located in the 4300 block of Goddard on the South Side of the street facing
North.  Said residence is a yellow siding
frame with white trim. The residence has a gray composition roof.  The primary door used for entrance is white
in color and faces north.  The numbers A4316
and 4318A are
affixed to two mailboxes in-front of the residence at 4316 Goddard.  Said residence is located in the City of Fort
Worth, Tarrant County, State of Texas which said controlled substance namely
Cocaine is possessed, and under the control of Eduardo Cantu, a Hispanic male, date
of birth 05/02/69, Gustavo Rodriguez, a Hispanic male date of birth 11/25/65,
Elpidio Becerril, a Hispanic male date of birth 11/25/65 and Jose M. Coronado,
a Hispanic Male date of birth 02/16/79.

 

MY
BELIEFS ARE BASED ON THE FOLLOWING FACTS AND CIRCUMSTANCES:

 

1.                 
Your affiant is employed as a Fort Worth Police Officer
assigned to the Special Operations Division, MNICU Section and has been
employed as a police officer for over five years.  Your affiant has received numerous hours of
training in the field of narcotic and dangerous drug enforcement.

 

2.                 
That in November of 2003, your affiant received
information that a Hispanic male by the name of Eduardo Cantu was selling and
transporting large amount of cocaine in the City of Fort Worth. 

 

3.                 
That your affiant identified the suspect as Eduardo
Cantu, a Hispanic male, date of birth 05/02/69 through Tarrant County Arrest
Records and Photograph (CID# 0286563).

 

4.                 
That on this date, November 24, 2003, your affiant and
assisting Fort Worth Police Narcotic Officers began surveillance of the
suspect.  Officers followed the suspect
to a residence at 4316 Goddard Street in Fort Worth, Tarrant County,
Texas.  This residence has two mail boxes
in front of the residence.  One mail box
displaying the numbers A4316A 
and the other displaying A4318.A 
That through Tarrant County Tax records, this shows to be one residence.

 

5.                 
That on this date, officers observed the suspect
driving a 2000 Ford Taurus bearing Texas LP# G89CWH arrive at this location and
pull into the driveway and continue into the backyard of this residence.  Officers then observed the suspect enter a
small shed in the backyard of this residence.








6.                 
After approximately 5 minutes, your affiant was advised
by surveillance officers that the suspect exited the metal shed with an object
in his right hand and immediately threw it into the backseat, as he looked
around very nervous.

 

7.                 
Surveillance officers then followed the suspect away
from the residence.  Upon the suspect
approaching the intersection at Goddard and N. Beach, the suspect failed to
utilize his right turn signal.  Fort
Worth Patrol Officer R. Dellossantos then initiated a traffic stop due to this
traffic offense at 2000 N. Beach Street in Fort Worth, Tarrant County, Texas.

 

8.                 
Officer Dellossantos then made contact with the suspect
and positively identified the suspect as Eduardo Cantu.  Officer Dellossantos then received written
consent from the suspect to search his vehicle. 
Upon searching the back left portion of the backseat, Officer
Dellossantos located a Exhibit #1 (brown paper sack, containing three brick
like objects, believed to contain cocaine) on the floor board of the vehicle. 

9.                 
The suspect was then placed under arrest for Possession
of C/S With Intent to Deliver over 400 grams.

 

10.             
Surveillance officers then returned to the residence of
4316 Goddard and approached the residence and secured it to prevent any
destruction of evidence after officers heard loud banging in the detached
garage.  Officers then opened the bay
door and observed suspects Gustavo Rodriguez, a Hispanic male date of birth
11/25/65, Elpidio Becerril, a Hispanic male date of birth 11/25/65 and Jose M.
Coronado, a Hispanic Male date of birth 02/16/79 all dissembling a tool box on
the 2000 White Ford Pickup bearing Texas LP# 7VSH10.

 

11.             
Your affiant has reason to believe and does believe
that the residence at 4316 Goddard and the vehicles at this location are being
used to store large amounts of cocaine.








Therefore, I , the undersigned ask that a search
warrant be issued according to the provisions of the State Law to search for
and seize the controlled substance namely Cocaine, believed unlawfully
possessed by Eduardo Cantu, a Hispanic male, date of birth 05/02/69, Gustavo
Rodriguez, a Hispanic male date of birth 11/25/65, Elpidio Becerril, a Hispanic
male date of birth 11/25/65 and Jose M. Coronado, a Hispanic Male date of birth
02/16/79 at 4316 Goddard in the City of Fort Worth, Tarrant County, State of
Texas.

When reviewing a magistrate=s
decision to issue a warrant, we apply the deferential standard of review
articulated by the United States Supreme Court in Illinois v. Gates, 462
U.S. 213, 236, 103 S. Ct. 2317, 2331 (1983). 
Swearingen v. State, 143 S.W.3d 808, 810‑11 (Tex. Crim.
App. 2004).  Under that standard, we
uphold the probable cause determination Aso
long as the magistrate had a >substantial
basis for . . . conclud[ing]=
that a search would uncover evidence of wrongdoing.@  Gates, 462 U.S. at 236, 103 S. Ct. at
2331; see Swearingen, 143 S.W.3d at 810.








In assessing the sufficiency
of an affidavit for an arrest or a search warrant, the reviewing court is
limited to the four corners of the affidavit. 
Hankins v. State, 132 S.W.3d 380, 388 (Tex. Crim. App.), cert.
denied, 125 S. Ct. 358 (2004); Jones v. State, 833 S.W.2d 118, 123
(Tex. Crim. App. 1992), cert. denied, 507 U.S. 921 (1993).  The reviewing court should interpret the
affidavit in a common sense and realistic manner, recognizing that the
magistrate was permitted to draw reasonable inferences.  Hankins, 132 S.W.3d at 388; Jones,
833 S.W.2d at 124.








Probable cause will be found
to exist if the affidavit shows facts and circumstances within the affiant=s knowledge and of which the affiant has reasonably trustworthy
information sufficient to warrant a person of reasonable caution to believe
that the criteria set forth in code of criminal procedure article 18.01(c),
have been met.  Tolentino v. State,
638 S.W.2d 499, 501 (Tex. Crim. App. 1982); see Tex. Code Crim. Proc. Ann. art. 18.01(c) (Vernon 2005).  Therefore, the affidavit must set forth facts
which establish that (1) a specific offense has been committed, (2) the
property to be searched or items to be seized constitute evidence of the
offense or evidence that a particular person committed the offense, and (3) the
property or items are located at or on the person, place, or thing to be
searched.  Tolentino, 638 S.W.2d
at 501.  A mere affirmation of
belief or suspicion is not enough to sustain the issuance of a search warrant.  Id. 
The task of the issuing magistrate is to make a practical, common sense
decision whether, given all the circumstances set forth in the affidavit before
him, there is a fair probability that contraband or evidence of a crime will be
found in a particular place.  Johnson
v. State, 803 S.W.2d 272, 288 (Tex. Crim. App. 1990), cert. denied,
501 U.S. 1259 (1991), overruled on other grounds by Heitman v. State,
815 S.W.2d 681, 685 n.6 (Tex. Crim. App. 1991).

The facts that can be derived
from the search warrant affidavit are as follows:  (1) the affiant received information that
Cantu was selling and transporting a large amount of cocaine in the City of
Fort Worth, (2) officers saw Cantu enter the detached garage[2]
on Goddard Street, remain for approximately five minutes, and return to his car
carrying an Aobject,@ which he threw somewhere into the backseat, (3) after a traffic stop
of Cantu, officers located a brown paper sack, containing three brick-like
objects believed to be cocaine, on the floorboard of the backseat of his
vehicle, (4) officers heard a Aloud banging noise@ coming from the detached garage at the house on Goddard Street,
entered the detached garage, and found three Hispanic males disassembling a
tool box on a pickup truck, and (5) the affiant has reason to believe and does
believe that the residence at Goddard Street and the vehicles at that location
are being used to store large amounts of cocaine.








We must determine whether the
facts stated in the affidavit are sufficient to support a conclusion that the
contraband would be found at the detached garage on Goddard Street.  Johnson, 803 S.W.2d at 288.  The affiant=s mere belief that the residence on Goddard Street was being used to
store large amounts of cocaine is not enough to support the issuance of the
search warrant.  Tolentino, 638
S.W.2d at 501.  Officer Cedillo says he Areceived information@ that Cantu was selling and transporting a large amount of cocaine in
the City of Fort Worth, but he does not elaborate as to how or from whom he
received this information.  Furthermore,
he does not describe any particular neighborhood or area in which Cantu was
selling and transporting cocaine in the City of Fort Worth, which encompasses a
relatively large geographical area.  The
affiant does not mention that any surveillance officers noticed any suspicious
activity at the residence or detached garage or whether the residence or garage
is located in a high-crime area or an area of frequent drug activity.








Furthermore, the affiant has
not provided facts that would lead a detached and neutral magistrate to
determine that the brown paper sack containing the cocaine was the same Aobject@ that Cantu
obtained from the detached garage and placed in the backseat of his car.  The affiant never states that he or anyone
else had seen cocaine at the residence or detached garage.  Although the affiant speaks of officers
securing the detached garage, he gives no information that the officers viewed
anything within the detached garage giving rise to the inference that Alarge amounts of cocaine@ were being Astored@ there.  The affiant gives no
indication that Adissembling
a tool box@ on a pickup
truck is in any way connected with drugs being Astored@ in the
detached garage.  While the recited facts
may lead to a suspicion that contraband might be located at the residence, we
hold that the magistrate did not have a substantial basis for concluding that a
search would uncover evidence of wrongdoing.  
See Gates, 462 U.S. at 236, 103 S. Ct. 2331; Swearingen,
143 S.W.3d at 810.  Accordingly, we hold
that the affidavit was insufficient to support the issuance of a search
warrant.

3.  Exigent Circumstances








Although we have determined
that the search warrant cannot be supported by the affidavit, we must next
determine whether exigent circumstances existed for a warrantless search.  See Adkins v. State, 717 S.W.2d
363, 365-66 (Tex. Crim. App. 1986) (holding that the actual procurement of a
warrant does not preclude use of exigent circumstances to justify a search in
the event a warrant fails).  In his first
issue, Appellant contends that the trial court erred in overruling his motion
to suppress evidence and admitting seized evidence over objections because
Appellant, his person, his things, and his residence were seized illegally
without probable cause and without a warrant. 
The State argues that the officers were reasonable in freezing the crime
scene until the search warrant was obtained.

A non‑consensual police
entry into a residential unit constitutes a search. McNairy v. State,
835 S.W.2d 101, 106 (Tex. Crim. App. 1991). 
Under both federal and state constitutional law, a warrantless search of
a residence is illegal unless probable cause exists in combination with other
exigent circumstances.  Estrada v.
State, 154 S.W.3d 604, 610 (Tex. Crim. App. 2005).  A warrantless search is justified when the
State shows (1) that probable cause existed at the time the search was made and
(2) that exigent circumstances existed that made the procuring of a warrant
impracticable.  Id. at 610; McNairy,
835 S.W.2d at 106. 








Probable cause to search a
residence exists when reasonably trustworthy facts and circumstances within the
knowledge of the officer on the scene would lead a person of reasonable
prudence to believe that the instrumentality of a crime or evidence of a crime
will be found.  McNairy, 835
S.W.2d at 106.  Exigent circumstances
justifying a warrantless entry include (1) rendering aid or assistance to
persons whom the officers reasonably believe are in need of assistance, (2)
preventing the destruction of evidence or contraband, and (3) protecting the
officers from persons whom they reasonably believe to be present and armed and
dangerous.  Id. at 107.  With regard to the possible destruction of
evidence as an exigent circumstance, the State must show that the police could
have reasonably concluded that evidence would be destroyed or removed before
they could obtain a search warrant.  Id.









We must first determine
whether reasonably trustworthy facts and circumstances within the knowledge of
the officer on the scene would lead a person of reasonable prudence to believe
that the instrumentality of a crime or evidence of a crime would be found at
the location.  Id. at 106.  The evidence presented at the motion to
suppress hearing shows that, while involved in conducting surveillance of
Cantu, officers followed him to the Goddard Street address, where he entered
the detached garage and returned approximately forty-five minutes later,[3]
carrying a Apackage@ that he placed behind the driver=s side on the floorboard. 
Following a traffic stop of Cantu and garnering consent to search his
car, officers recovered approximately three kilograms of what they believed to
be cocaine from directly behind the driver=s seat on the floorboard; Officer Blaisdell testified that the cocaine
was contained in exactly the same Apackage@ that Cantu
was carrying when he left the detached garage. 
Officer Blaisdell testified that Cantu informed him that he obtained the
three kilograms of cocaine at the residence on Goddard Street and that at least
ten more kilograms of cocaine were at that location.  We conclude that, based upon reasonably
trustworthy facts and circumstances within his knowledge, Officer Blaisdell had
probable cause to believe that contraband could be found at the residence on
Goddard Street.








Having determined that
probable cause existed, we next examine the record to determine whether exigent
circumstances existed to justify the warrantless entry.  See McNairy, 835 S.W.2d at 107.  Several factors are used in analyzing whether
officers could have reasonably concluded that evidence would be destroyed or
removed before they could obtain a search warrant: (1) the degree of urgency
involved and the amount of time necessary to obtain a warrant, (2) a reasonable
belief that the contraband is about to be removed, (3) the possibility of
danger to the officers guarding the site of the contraband while a search
warrant is sought, (4) information indicating that the possessors of the
contraband are aware that the police are on their trail, and (5) the ready
destructibility of the contraband and knowledge that efforts to dispose of
narcotics and to escape are characteristic behavior of persons engaged in the
narcotics traffic.  Id.  Securing a dwelling, on the basis of probable
cause, to prevent the destruction or removal of evidence while a search warrant
is being sought is not itself an unreasonable seizure of either the dwelling or
its contents.  Segura v. United States,
468 U.S. 796, 810, 104 S. Ct. 3380, 3388 (1984).

Sergeant Hall testified that
he went to observe the Goddard Street residence, and while he was there, other
officers called to inform him that cocaine had been seized from Cantu=s vehicle.  Sergeant Hall
testified that he heard Awhat [he]
recognized as tool noises, metal on metal banging@ that Aappeared to
be coming from the garage area behind the house.@  Based on his knowledge that
drugs were probably located in the detached garage behind the house and his
belief that the drugs could have been destroyed or moved, he approached the
detached garage.  Sergeant Hall was
justified in believing that the contraband, which was readily destructible,
could be destroyed or  removed before he
was able to obtain a search warrant.

The garage door was open
about a foot, and Sergeant Hall proceeded to open it further.  Once inside, Sergeant Hall and Lieutenant
Morgan identified themselves as Fort Worth police officers and secured the
premises while Officer Cedillo procured a search warrant.  The officers told the subjects to have a
seat, but they did not handcuff them. 
Only once had he been informed that the warrant had been signed did
Sergeant Hall begin searching the premises. 
The State does not assert, nor does the record support a finding, that
the evidence seized was in plain view.













A search without a warrant
must be strictly circumscribed by the exigencies which justify its initiation.  Mincey v. Arizona, 437 U.S. 385, 393, 98
S. Ct. 2408, 2413 (1978); Laney v. State, 117 S.W.3d 854, 862 (Tex.
Crim. App. 2003).  Once the emergency
that justified the initial intrusion into the home ends, the lawfulness of the
emergency search also ends.  Bray v.
State, 597 S.W.2d 763, 765 (Tex. Crim. App. 1980).  In Bray, an officer was told to check
on a location where an ambulance had been dispatched to investigate a drug
overdose and possible death.  Id.  When the police officer arrived at the
location where the ambulance had been dispatched, he spoke with the ambulance
attendants, who told him there was no longer a medical emergency.  Id. at 766. The ambulance attendants
informed the police officer that he could locate the person whom they went to
treat in an upstairs apartment, and the officer proceeded to ascertain the man=s condition by entering the apartment, where he found the defendant in
a bathroom using a controlled substance. 
Id. at 767.  The court held
that because the ambulance attendants responded to the reported emergency,
determined there was no immediate danger, and left, the officer was no longer
responding to an emergency.  Id. at
768.  Thus, the officer=s search of the premises, which led to the arrest of the defendant,
who was using a controlled substance in the bathroom, was not justified by an
emergency, and the evidence obtained was not admissible.  Id. at 767, 769.

Here, the officers were
justified in securing the premises and the subjects.  The cocaine that the officers seized was
packaged in boxes, containers, and an ice chest and was not in plain view.  Though the officers properly waited for the
search warrant, it was invalid because the underlying affidavit was not based
on probable cause.  When the officers
secured the scene, the exigency then disappeared because there was no longer a
danger that evidence would be destroyed or removed.  Thus, the officer=s search of the detached garage, which uncovered the contraband, was
not justified under the doctrine of exigent circumstances.  See Bray, 597 S.W.2d at 768-69.  Accordingly, we hold that the trial court
abused its discretion in denying Appellant=s motion to suppress because no exception to the warrantless search
applied.

4.  Harmful Error Test








Having found error, we must
conduct a harm analysis to determine whether the error calls for reversal of
the judgment.  Tex. R. App. P. 44.2. 
If the error is constitutional, we apply rule 44.2(a) and reverse unless
we determine beyond a reasonable doubt that the error did not contribute to
appellant=s conviction
or punishment.  Tex. R. App. P. 44.2(a). 
Otherwise, we apply rule 44.2(b) and disregard the error if it did not
affect appellant=s
substantial rights.  Tex. R. App. P. 44.2(b); see Mosley
v. State, 983 S.W.2d 249, 259 (Tex. Crim. App. 1998) (op. on reh=g), cert. denied, 526 U.S. 1070 (1999); Coggeshall v. State,
961 S.W.2d 639, 642-43 (Tex. App.CFort Worth 1998, pet. ref=d).

The harm analysis for the
erroneous admission of evidence obtained in violation of the Fourth Amendment
must be rule 44.2(a)=s
constitutional standard.   Hernandez
v. State, 60 S.W.3d 106, 108 (Tex. Crim. App. 2001).   Because we determine that the error is
constitutional, we apply rule 44.2(a).  Tex. R. App. P. 44.2(a).  The question is whether the trial court=s denial of Appellant=s motion to suppress and admitting the evidence was harmless beyond a
reasonable doubt.  See Williams v.
State, 958 S.W.2d 186, 194 (Tex. Crim. App. 1997).  In applying the Aharmless error@ test, our
primary question is whether there is a Areasonable possibility@ that the error might have contributed to the conviction.  Mosley, 983 S.W.2d at 259.

After carefully reviewing the
record and performing the required harm analysis under rule 44.2(a), we are
unable to determine beyond a reasonable doubt that the error did not contribute
to Appellant=s conviction
or punishment.  Williams, 958
S.W.2d at 195.  The erroneous admission
of the contraband formed the basis for Appellant=s conviction; thus, Appellant was harmed by its admission.  Accordingly, we sustain Appellant=s second issue.








INSTRUCTED VERDICT

In his fifth issue, Appellant
asserts that the trial court erred in overruling his motion for directed
verdict because there was insufficient evidence as a matter of law to sustain
his conviction.  A challenge to the
denial of a motion for an instructed verdict is a challenge to the legal
sufficiency of the evidence.  McDuff
v. State, 939 S.W.2d 607, 613 (Tex. Crim. App.), cert. denied, 522
U.S. 844 (1997). 








In reviewing the legal
sufficiency of the evidence to support a conviction, we view all the evidence
in the light most favorable to the verdict in order to determine whether any
rational trier of fact could have found the essential elements of the crime
beyond a reasonable doubt.  Jackson v.
Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); Hampton v.
State, 165 S.W.3d 691, 693 (Tex. Crim. App. 2005).  We must resolve any inconsistencies in the
evidence in favor of the verdict.  Curry
v. State, 30 S.W.3d 394, 406 (Tex. Crim. App. 2000).  We must consider all the evidence admitted at
trial, even improperly admitted evidence, when performing a legal sufficiency
review.  Moff v. State, 131 S.W.3d
485, 489-90 (Tex. Crim. App. 2004); see also Poindexter v. State, 153
S.W.3d 402, 406-07 (Tex. Crim. App. 2005). 
We must do so even in a case that we reverse and remand because of error
in the admission of evidence.  Moff,
131 S.W.3d at 490; Miles v. State, 918 S.W.2d 511, 512 (Tex. Crim. App.
1996).

Appellant contends that the
evidence is legally insufficient because the State failed to prove a link
connecting Appellant to the cocaine.  It
was undisputed that officers found Appellant inside the detached garage from
which the officers recovered the forty-three kilograms of cocaine.  Officer Blaisdell testified that, in his
opinion, the forty-three kilograms of cocaine were packed in a manner that
indicated an intent to deliver.

The jury was entitled to
believe Officer Hall=s testimony
that Appellant had been in the bed of the pickup truck working on reattaching
the toolbox that concealed the compartment where the cocaine could have been
hidden. Additionally, in his written statement, Appellant admitted that he
helped unload the drugs and that he was being paid for the use of the house.

Applying the proper standard
of review, we find the evidence that was admitted by the trial court to be
legally sufficient to support the jury=s verdict.  Accordingly, we hold
that the trial court did not err in overruling Appellant=s motion for instructed verdict. 
We overrule Appellant=s fifth issue.

 

 

 








CONCLUSION

Based on our disposition of
Appellant=s second
issue, we will not address issues one, three, and four.  See Tex.
R. App. P. 47.1.  We reverse and
remand the case to the trial court for further proceedings.

 

DIXON W. HOLMAN

JUSTICE

 

PANEL
B:  LIVINGSTON, DAUPHINOT, and HOLMAN,
JJ.

 

DO
NOT PUBLISH

Tex. R. App. P. 47.2(b)

 

DELIVERED:  April 27, 2006











[1]See Tex. R. App. P. 47.4.





[2]The
affidavit refers to the structure as a Adetached garage,@ a Ametal
shed,@ and
a Asmall
shed.@  In our opinion, we will refer to it as a
detached garage.





[3]We
recognize that the search warrant affidavit states that Cantu was in the
detached garage for five minutes; however, Officer Blaisdell testified at the
suppression hearing that Cantu was inside the detached garage for forty-five
minutes.