RODRIGUEZ v. STATE

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-05-021-CR

GUSTAVO RODRIGUEZ APPELLANT

V.

THE STATE OF TEXAS STATE

------------

FROM CRIMINAL DISTRICT COURT NO. 3 OF TARRANT COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

Appellant Gustavo Rodriguez appeals his conviction for possession of more than 400 grams of cocaine with intent to deliver.  After convicting Appellant of the charged offense, the jury assessed his punishment at forty-seven years’ confinement and a $40,000 fine.  The trial court sentenced Appellant accordingly.  Because we hold that the trial court abused its discretion in not granting Appellant’s motion to suppress, we reverse and remand.

FACTUAL BACKGROUND

On November 24, 2003, Officer Bruce Blaisdell and Officer Steven Hall, along with other members of the Fort Worth police force, were involved in conducting surveillance of Eduardo Cantu, Appellant’s uncle.  The officers  followed Cantu to 4316 Goddard Street in Fort Worth.  Officer Blaisdell testified at the suppression hearing that Cantu went inside a detached garage in the back of the house and returned to his car about forty-five minutes later, carrying a package that he placed in his car.

Officer Blaisdale followed Cantu’s vehicle for a few blocks, until he saw Cantu fail to use a turn signal when he turned.  Officer Blaisdell contacted an officer in a marked police car and requested that the officer conduct a traffic stop of Cantu, which he did.  The officer obtained Cantu’s consent to search his vehicle, and the officer recovered approximately three kilograms of cocaine from his car.  Cantu informed officers that more cocaine was located at the house on Goddard Street.  Based on this information, the officers sought a search warrant for the house on Goddard Street.

Sergeant Hall went to the Goddard Street address to observe the house while other officers obtained the search warrant.  While there, he heard what he recognized as “tool noises, metal on metal banging” that appeared to be coming from the garage area behind the house.  Sergeant Hall and Lieutenant J.T. Morgan approached the detached garage, where the overhead door was partially open.  Sergeant Hall raised the garage door and saw Appellant and two other men inside.

Sergeant Hall and Lieutenant Morgan identified themselves as police officers and asked the men to have a seat.  Approximately an hour later, Officer Jerry Cedillo called Sergeant Hall and informed him that the magistrate had signed the warrant.  The officers conducted a search of the detached garage, found forty-three kilograms of cocaine, and arrested Appellant.  Officer Cedillo later arrived at the scene and obtained a written statement from Appellant.

MOTION TO SUPPRESS

In his second issue, Appellant contends that the trial court erred in overruling his motion to suppress the evidence because the search warrant was obtained without probable cause.

1.  Standard of Review

We review a trial court’s ruling on a motion to suppress evidence under a bifurcated standard of review.  
Carmouche v. State
, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000); 
Guzman v. State
, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997).  In reviewing the trial court’s decision, we do not engage in our own factual review.  
Romero v. State
, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990); 
Best v. State
, 118 S.W.3d 857, 861 (Tex. App.—Fort Worth 2003, no pet.).  The trial judge is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony.  
State v. Ross
, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000); 
State v. Ballard
, 987 S.W.2d 889, 891 (Tex. Crim. App. 1999).  Therefore, we give almost total deference to the trial court’s rulings on (1) questions of historical fact and (2) application-of-law-to-fact questions that turn on an evaluation of credibility and demeanor.  
Johnson v. State
, 68 S.W.3d 644, 652-53 (Tex. Crim. App. 2002); 
State v. Ballman
, 157 S.W.3d 65, 68 (Tex. App.—Fort Worth 2004, pet. ref’d).  But when the trial court’s rulings do not turn on the credibility and demeanor of the witnesses, we review de novo a trial court’s rulings on mixed questions of law and fact.  
Estrada v. State
, 154 S.W.3d 604, 607 (Tex. Crim. App. 2005); 
Johnson
, 68 S.W.3d at 652-53.

When reviewing a trial court’s ruling on a mixed question of law and fact, the court of appeals may review de novo the trial court’s application of the law of search and seizure to the facts of the case.  
Estrada
, 154 S.W.3d at 607.  When there are no explicit findings of historical fact, the evidence must be viewed in the light most favorable to the trial court’s ruling.  
Id
.

We must uphold the trial court’s ruling if it is supported by the record and correct under any theory of law applicable to the case even if the trial court gave the wrong reason for its ruling.  
Armendariz v. State
, 123 S.W.3d 401, 404 (Tex. Crim. App. 2003), 
cert. denied
, 541 U.S. 974 (2004); 
Ross
, 32 S.W.3d at 856; 
Romero
, 800 S.W.2d at 543.  

2.  Sufficiency of the Search Warrant Affidavit

Appellant asserts that the warrant does not state with sufficient specificity the acts that constitute probable cause to search because the officer merely states in his conclusion that he has reason to believe that there are large amounts of cocaine at the Goddard Street premises, but he never states facts supporting that belief.  The warrant affidavit provides,

I, Fort Worth Police Narcotic Officer J. Cedillo #3014 do solemly swear that heretofore, on or about the 24th day of November, 2003, in the City of Fort Worth, Tarrant County, State of Texas, Eduardo Cantu, a Hispanic male, date of birth 05/02/69, Gustavo Rodriguez, a Hispanic male date of birth 11/25/65, Elpidio Becerril, a Hispanic male date of birth 11/25/65 and Jose M. Coronado, a Hispanic Male date of birth 02/16/79 then and there unlawfully possess and does at this time unlawfully possess a controlled substance namely Cocaine at 4316 Goddard, in the City of Fort Worth, Tarrant County, State of Texas.  This residence is described as a single story family dwelling.  The residence is located in the 4300 block of Goddard on the South Side of the street facing North.  Said residence is a yellow siding frame with white trim. The residence has a gray composition roof.  The primary door used for entrance is white in color and faces north.  The numbers “4316 and 4318“ are affixed to two mailboxes in-front of the residence at 4316 Goddard.  Said residence is located in the City of Fort Worth, Tarrant County, State of Texas which said controlled substance namely Cocaine is possessed, and under the control of Eduardo Cantu, a Hispanic male, date of birth 05/02/69, Gustavo Rodriguez, a Hispanic male date of birth 11/25/65, Elpidio Becerril, a Hispanic male date of birth 11/25/65 and Jose M. Coronado, a Hispanic Male date of birth 02/16/79.

MY BELIEFS ARE BASED ON THE FOLLOWING FACTS AND CIRCUMSTANCES:

Your affiant is employed as a Fort Worth Police Officer assigned to the Special Operations Division, MNICU Section and has been employed as a police officer for over five years.  Your affiant has received numerous hours of training in the field of narcotic and dangerous drug enforcement.

 

That in November of 2003, your affiant received information that a Hispanic male by the name of Eduardo Cantu was selling and transporting large amount of cocaine in the City of Fort Worth. 

That your affiant identified the suspect as Eduardo Cantu, a Hispanic male, date of birth 05/02/69 through Tarrant County Arrest Records and Photograph (CID# 0286563).

That on this date, November 24, 2003, your affiant and assisting Fort Worth Police Narcotic Officers began surveillance of the suspect.  Officers followed the suspect to a residence at 4316 Goddard Street in Fort Worth, Tarrant County, Texas.  This residence has two mail boxes in front of the residence.  One mail box displaying the numbers “4316“  and the other displaying “4318.“  That through Tarrant County Tax records, this shows to be one residence.

That on this date, officers observed the suspect driving a 2000 Ford Taurus bearing Texas LP# G89CWH arrive at this location and pull into the driveway and continue into the backyard of this residence.  Officers then observed the suspect enter a small shed in the backyard of this residence.

After approximately 5 minutes, your affiant was advised by surveillance officers that the suspect exited the metal shed with an object in his right hand and immediately threw it into the backseat, as he looked around very nervous.

Surveillance officers then followed the suspect away from the residence.  Upon the suspect approaching the intersection at Goddard and N. Beach, the suspect failed to utilize his right turn signal.  Fort Worth Patrol Officer R. Dellossantos then initiated a traffic stop due to this traffic offense at 2000 N. Beach Street in Fort Worth, Tarrant County, Texas.

Officer Dellossantos then made contact with the suspect and positively identified the suspect as Eduardo Cantu.  Officer Dellossantos then received written consent from the suspect to search his vehicle.  Upon searching the back left portion of the backseat, Officer Dellossantos located a Exhibit #1 (brown paper sack, containing three brick like objects, believed to contain cocaine) on the floor board of the vehicle. 

The suspect was then placed under arrest for Possession of C/S With Intent to Deliver over 400 grams.

Surveillance officers then returned to the residence of 4316 Goddard and approached the residence and secured it to prevent any destruction of evidence after officers heard loud banging in the detached garage.  Officers then opened the bay door and observed suspects Gustavo Rodriguez, a Hispanic male date of birth 11/25/65, Elpidio Becerril, a Hispanic male date of birth 11/25/65 and Jose M. Coronado, a Hispanic Male date of birth 02/16/79 all dissembling a tool box on the 2000 White Ford Pickup bearing Texas LP# 7VSH10.

Your affiant has reason to believe and does believe that the residence at 4316 Goddard and the vehicles at this location are being used to store large amounts of cocaine.

Therefore, I , the undersigned ask that a search warrant be issued according to the provisions of the State Law to search for and seize the controlled substance namely Cocaine, believed unlawfully possessed by Eduardo Cantu, a Hispanic male, date of birth 05/02/69, Gustavo Rodriguez, a Hispanic male date of birth 11/25/65, Elpidio Becerril, a Hispanic male date of birth 11/25/65 and Jose M. Coronado, a Hispanic Male date of birth 02/16/79 at 4316 Goddard in the City of Fort Worth, Tarrant County, State of Texas.

When reviewing a magistrate’s decision to issue a warrant, we apply the deferential standard of review articulated by the United States Supreme Court in 
Illinois v. Gates
, 462 U.S. 213, 236, 103 S. Ct. 2317, 2331 (1983).  
Swearingen v. State
, 143 S.W.3d 808, 810-11 (Tex. Crim. App. 2004).  Under that standard, we uphold the probable cause determination “so long as the magistrate had a ‘substantial basis for . . . conclud[ing]’ that a search would uncover evidence of wrongdoing.”  
Gates
, 462 U.S. at 236, 103 S. Ct. at 2331; 
see Swearingen
, 143 S.W.3d at 810.

In assessing the sufficiency of an affidavit for an arrest or a search warrant, the reviewing court is limited to the four corners of the affidavit.  
Hankins v. State
, 132 S.W.3d 380, 388 (Tex. Crim. App.), 
cert. denied
, 125 S. Ct. 358 (2004); 
Jones v. State
, 833 S.W.2d 118, 123 (Tex. Crim. App. 1992), 
cert. denied
, 507 U.S. 921 (1993).  The reviewing court should interpret the affidavit in a common sense and realistic manner, recognizing that the magistrate was permitted to draw reasonable inferences.  
Hankins
, 132 S.W.3d at 388; 
Jones
, 833 S.W.2d at 124.

Probable cause will be found to exist if the affidavit shows facts and circumstances within the affiant’s knowledge and of which the affiant has reasonably trustworthy information sufficient to warrant a person of reasonable caution to believe that the criteria set forth in code of criminal procedure article 18.01(c), have been met.  
Tolentino v. State
, 638 S.W.2d 499, 501 (Tex. Crim. App. 1982); 
see
 
Tex. Code Crim. Proc. Ann.
 art. 18.01(c) (Vernon 2005).  Therefore, the affidavit must set forth facts which establish that (1) a specific offense has been committed, (2) the property to be searched or items to be seized constitute evidence of the offense or evidence that a particular person committed the offense, and (3) the property or items are located at or on the person, place, or thing to be searched.  
Tolentino
, 638 S.W.2d at 501. 
 
A mere affirmation of belief or suspicion is not enough to sustain the issuance of a search warrant.  
Id.
  The task of the issuing magistrate is to make a practical, common sense decision whether, given all the circumstances set forth in the affidavit before him, there is a fair probability that contraband or evidence of a crime will be found in a particular place.  
Johnson v. State
, 803 S.W.2d 272, 288 (Tex. Crim. App. 1990), 
cert. denied
, 501 U.S. 1259 (1991), 
overruled on other grounds by Heitman v. State
, 815 S.W.2d 681, 685 n.6 (Tex. Crim. App. 1991).

The facts that can be derived from the search warrant affidavit are as follows:  (1) the affiant received information that Cantu was selling and transporting a large amount of cocaine in the City of Fort Worth, (2) officers saw Cantu enter the detached garage
(footnote: 2) on Goddard Street, remain for approximately five minutes, and return to his car carrying an “object,” which he threw somewhere into the backseat, (3) after a traffic stop of Cantu, officers located a brown paper sack, containing three brick-like objects believed to be cocaine, on the floorboard of the backseat of his vehicle, (4) officers heard a “loud banging noise” coming from the detached garage at the house on Goddard Street, entered the detached garage, and found three Hispanic males disassembling a tool box on a pickup truck, and (5) the affiant has reason to believe and does believe that the residence at Goddard Street and the vehicles at that location are being used to store large amounts of cocaine.

We must determine whether the facts stated in the affidavit are sufficient to support a conclusion that the contraband would be found at the detached garage on Goddard Street.  
Johnson
, 803 S.W.2d at 288.  The affiant’s mere belief that the residence on Goddard Street was being used to store large amounts of cocaine is not enough to support the issuance of the search warrant.  
Tolentino
, 638 S.W.2d at 501.  Officer Cedillo says he “received information” that Cantu was selling and transporting a large amount of cocaine in the City of Fort Worth, but he does not elaborate as to how or from whom he received this information.  Furthermore, he does not describe any particular neighborhood or area in which Cantu was selling and transporting cocaine in the City of Fort Worth, which encompasses a relatively large geographical area.  The affiant does not mention that any surveillance officers noticed any suspicious activity at the residence or detached garage or whether the residence or garage is located in a high-crime area or an area of frequent drug activity.

Furthermore, the affiant has not provided facts that would lead a detached and neutral magistrate to determine that the brown paper sack containing the cocaine was the same “object” that Cantu obtained from the detached garage and placed in the backseat of his car.  The affiant never states that he or anyone else had seen cocaine at the residence or detached garage.  Although the affiant speaks of officers securing the detached garage, he gives no information that the officers viewed anything within the detached garage giving rise to the inference that “large amounts of cocaine” were being “stored” there.  The affiant gives no indication that “dissembling a tool box” on a pickup truck is in any way connected with drugs being “stored” in the detached garage.  While the recited facts may lead to a suspicion that contraband might be located at the residence, we hold that the magistrate did not have a substantial basis for concluding that a search would uncover evidence of wrongdoing.   
See
 
Gates
, 462 U.S. at 236, 103 S. Ct. 2331;
 Swearingen
, 143 S.W.3d at 810.  Accordingly, we hold that the affidavit was insufficient to support the issuance of a search warrant.

3.  Exigent Circumstances

Although we have determined that the search warrant cannot be supported by the affidavit, we must next determine whether exigent circumstances existed for a warrantless search.  
See
 
Adkins v. State
, 717 S.W.2d 363, 365-66 (Tex. Crim. App. 1986) (holding that the actual procurement of a warrant does not preclude use of exigent circumstances to justify a search in the event a warrant fails).  In his first issue, Appellant contends that the trial court erred in overruling his motion to suppress evidence and admitting seized evidence over objections because Appellant, his person, his things, and his residence were seized illegally without probable cause and without a warrant.  The State argues that the officers were reasonable in freezing the crime scene until the search warrant was obtained.

A non-consensual police entry into a residential unit constitutes a search. 
McNairy v. State
, 835 S.W.2d 101, 106 (Tex. Crim. App. 1991).  Under both federal and state constitutional law, a warrantless search of a residence is illegal unless probable cause exists in combination with other exigent circumstances. 
 Estrada v. State
, 154 S.W.3d 604, 610 (Tex. Crim. App. 2005).  A warrantless search is justified when the State shows (1) that probable cause existed at the time the search was made and (2) that exigent circumstances existed that made the procuring of a warrant impracticable.  
Id. 
at 610; 
McNairy
, 835 S.W.2d at 106. 

Probable cause to search a residence exists when reasonably trustworthy facts and circumstances within the knowledge of the officer on the scene would lead a person of reasonable prudence to believe that the instrumentality of a crime or evidence of a crime will be found.  
McNairy
, 835 S.W.2d at 106.  Exigent circumstances justifying a warrantless entry include (1) rendering aid or assistance to persons whom the officers reasonably believe are in need of assistance, (2) preventing the destruction of evidence or contraband, and (3) protecting the officers from persons whom they reasonably believe to be present and armed and dangerous.  
Id. 
at 107.  With regard to the possible destruction of evidence as an exigent circumstance, the State must show that the police could have reasonably concluded that evidence would be destroyed or removed before they could obtain a search warrant.  
Id.
 

We must first determine whether reasonably trustworthy facts and circumstances within the knowledge of the officer on the scene would lead a person of reasonable prudence to believe that the instrumentality of a crime or evidence of a crime would be found at the location.  
Id.
 at 106.  The evidence presented at the motion to suppress hearing shows that, while involved in conducting surveillance of Cantu, officers followed him to the Goddard Street address, where he entered the detached garage and returned approximately forty-five minutes later,
(footnote: 3) carrying a “package” that he placed behind the driver’s side on the floorboard.  Following a traffic stop of Cantu and garnering consent to search his car, officers recovered approximately three kilograms of what they believed to be cocaine from directly behind the driver’s seat on the floorboard; Officer Blaisdell testified that the cocaine was contained in exactly the same “package” that Cantu was carrying when he left the detached garage.  Officer Blaisdell testified that Cantu informed him that he obtained the three kilograms of cocaine at the residence on Goddard Street and that at least ten more kilograms of cocaine were at that location.  We conclude that, based upon reasonably trustworthy facts and circumstances within his knowledge, Officer Blaisdell had probable cause to believe that contraband could be found at the residence on Goddard Street.

Having determined that probable cause existed, we next examine the record to determine whether exigent circumstances existed to justify the warrantless entry.  
See McNairy
, 835 S.W.2d at 107.  Several factors are used in analyzing whether officers could have reasonably concluded that evidence would be destroyed or removed before they could obtain a search warrant: (1) the degree of urgency involved and the amount of time necessary to obtain a warrant, (2) a reasonable belief that the contraband is about to be removed, (3) the possibility of danger to the officers guarding the site of the contraband while a search warrant is sought, (4) information indicating that the possessors of the contraband are aware that the police are on their trail, and (5) the ready destructibility of the contraband and knowledge that efforts to dispose of narcotics and to escape are characteristic behavior of persons engaged in the narcotics traffic.  
Id.
  Securing a dwelling, on the basis of probable cause, to prevent the destruction or removal of evidence while a search warrant is being sought is not itself an unreasonable seizure of either the dwelling or its contents.  
Segura v. United States
, 468 U.S. 796, 810, 104 S. Ct. 3380, 3388 (1984).

Sergeant Hall testified that he went to observe the Goddard Street residence, and while he was there, other officers called to inform him that cocaine had been seized from Cantu’s vehicle.  Sergeant Hall testified that he heard “what [he] recognized as tool noises, metal on metal banging” that “appeared to be coming from the garage area behind the house.”  Based on his knowledge that drugs were probably located in the detached garage behind the house and his belief that the drugs could have been destroyed or moved, he approached the detached garage.  Sergeant Hall was justified in believing that the contraband, which was readily destructible, could be destroyed or  removed before he was able to obtain a search warrant.

The garage door was open about a foot, and Sergeant Hall proceeded to open it further.  Once inside, Sergeant Hall and Lieutenant Morgan identified themselves as Fort Worth police officers and secured the premises while Officer Cedillo procured a search warrant.  The officers told the subjects to have a seat, but they did not handcuff them.  Only once had he been informed that the warrant had been signed did Sergeant Hall begin searching the premises.  The State does not assert, nor does the record support a finding, that the evidence seized was in plain view.

A search without a warrant must be strictly circumscribed by the exigencies which justify its initiation.
  Mincey v. Arizona
, 437 U.S. 385, 393, 98 S. Ct. 2408, 2413 (1978); 
Laney v. State
, 117 S.W.3d 854, 862 (Tex. Crim. App. 2003).  Once the emergency that justified the initial intrusion into the home ends, the lawfulness of the emergency search also ends.  
Bray v. State
, 597 S.W.2d 763, 765 (Tex. Crim. App. 1980)
.  In 
Bray
, an officer was told to check on a location where an ambulance had been dispatched to investigate a drug overdose and possible death.  
Id.
  When the police officer arrived at the location where the ambulance had been dispatched, he spoke with the ambulance attendants, who told him there was no longer a medical emergency.  
Id.
 at 766. The ambulance attendants informed the police officer that he could locate the person whom they went to treat in an upstairs apartment, and the officer proceeded to ascertain the man’s condition by entering the apartment, where he found the defendant in a bathroom using a controlled substance.  
Id.
 at 767.  The court held that because the ambulance attendants responded to the reported emergency, determined there was no immediate danger, and left, the officer was no longer responding to an emergency. 
 Id. 
at 768.  Thus, the officer’s search of the premises, which led to the arrest of the defendant, who was using a controlled substance in the bathroom, was not justified by an emergency, and the evidence obtained was not admissible.  
Id. 
at 767, 769.

Here, the officers were justified in securing the premises and the subjects.  The cocaine that the officers seized was packaged in boxes, containers, and an ice chest and was not in plain view.  Though the officers properly waited for the search warrant, it was invalid because the underlying affidavit was not based on probable cause.  When the officers secured the scene, the exigency then disappeared because there was no longer a danger that evidence would be destroyed or removed.  Thus, the officer’s search of the detached garage, which uncovered the contraband, was not justified under the doctrine of exigent circumstances.  
See Bray
, 597 S.W.2d at 768-69.  Accordingly, we hold that the trial court abused its discretion in denying Appellant’s motion to suppress because no exception to the warrantless search applied.

4.  Harmful Error Test

Having found error, we must conduct a harm analysis to determine whether the error calls for reversal of the judgment.  
Tex. R. App. P.
 44.2.  If the error is constitutional, we apply rule 44.2(a) and reverse unless we determine beyond a reasonable doubt that the error did not contribute to appellant’s conviction or punishment.  
Tex. R. App. P.
 44.2(a).  Otherwise, we apply rule 44.2(b) and disregard the error if it did not affect appellant’s substantial rights.  
Tex. R. App. P.
 44.2(b); 
see Mosley v. State,
 983 S.W.2d 249, 259 (Tex. Crim. App. 1998) (op. on reh’g), 
cert. denied
, 526 U.S. 1070 (1999); 
Coggeshall v. State
, 961 S.W.2d 639, 642-43 (Tex. App.—Fort Worth 1998, pet. ref’d).

The harm analysis for the erroneous admission of evidence obtained in violation of the Fourth Amendment must be rule 44.2(a)’s constitutional standard.   
Hernandez v. State
, 60 S.W.3d 106, 108 (Tex. Crim. App. 2001).   Because we determine that the error is constitutional, we apply rule 44.2(a). 
 Tex. R. App. P.
 44.2(a).  The question is whether the trial court’s denial of Appellant’s motion to suppress and admitting the evidence was harmless beyond a reasonable doubt.  
See Williams v. State
, 958 S.W.2d 186, 194 (Tex. Crim. App. 1997).  In applying the “harmless error” test, our primary question is whether there is a “reasonable possibility” that the error might have contributed to the conviction.  
Mosley
, 983 S.W.2d at 259.

After carefully reviewing the record and performing the required harm analysis under rule 44.2(a), we are unable to determine beyond a reasonable doubt that the error did not contribute to Appellant’s conviction or punishment.  
Williams
, 958 S.W.2d at 195.
  The erroneous admission of the contraband formed the basis for Appellant’s conviction; thus, Appellant was harmed by its admission.  Accordingly, we sustain Appellant’s second issue.

INSTRUCTED VERDICT

In his fifth issue, Appellant asserts that the trial court erred in overruling his motion for directed verdict because there was insufficient evidence as a matter of law to sustain his conviction.  A challenge to the denial of a motion for an instructed verdict is a challenge to the legal sufficiency of the evidence.  
McDuff v. State
, 939 S.W.2d 607, 613 (Tex. Crim. App.), 
cert. denied
, 522 U.S. 844 (1997). 

In reviewing the legal sufficiency of the evidence to support a conviction, we view all the evidence in the light most favorable to the verdict in order to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  
Jackson v. Virginia
, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); 
Hampton v. State
, 165 S.W.3d 691, 693 (Tex. Crim. App. 2005).
  
We must resolve any inconsistencies in the evidence in favor of the verdict.  
Curry v. State
, 30 S.W.3d 394, 406 (Tex. Crim. App. 2000).
  
We must consider all the evidence admitted at trial, even improperly admitted evidence, when performing a legal sufficiency review.  
Moff v. State, 
131 S.W.3d 485, 489-90 (Tex. Crim. App. 2004); 
see also Poindexter v. State
, 153 S.W.3d 402, 406-07 (Tex. Crim. App. 2005).  We must do so even in a case that we reverse and remand because of error in the admission of evidence.  
Moff
, 131 S.W.3d at 490; 
Miles v. State
, 918 S.W.2d 511, 512 (Tex. Crim. App. 1996).

Appellant contends that the evidence is legally insufficient because the State failed to prove a link connecting Appellant to the cocaine.  It was undisputed that officers found Appellant inside the detached garage from which the officers recovered the forty-three kilograms of cocaine.  Officer Blaisdell testified that, in his opinion, the forty-three kilograms of cocaine were packed in a manner that indicated an intent to deliver.

The jury was entitled to believe Officer Hall’s testimony that Appellant had been in the bed of the pickup truck working on reattaching the toolbox that concealed the compartment where the cocaine could have been hidden. Additionally, in his written statement, Appellant admitted that he helped unload the drugs and that he was being paid for the use of the house.

Applying the proper standard of review, we find the evidence that was admitted by the trial court to be legally sufficient to support the jury’s verdict.  Accordingly, we hold that the trial court did not err in overruling Appellant’s motion for instructed verdict.  We overrule Appellant’s fifth issue.

CONCLUSION

Based on our disposition of Appellant’s second issue, we will not address issues one, three, and four.  
See
 
Tex. R. App. P.
 47.1.  We reverse and remand the case to the trial court for further proceedings.

DIXON W. HOLMAN

JUSTICE

PANEL B:  LIVINGSTON, DAUPHINOT, and HOLMAN, JJ.

DO NOT PUBLISH

Tex. R. App. P.
 47.2(b)

DELIVERED:  April 27, 2006

FOOTNOTES
1:
See 
Tex. R. App. P.
 47.4.

2:
The affidavit refers to the structure as a “detached garage,” a “metal shed,” and a “small shed.”  In our opinion, we will refer to it as a detached garage.

3:
We recognize that the search warrant affidavit states that Cantu was in the detached garage for five minutes; however, Officer Blaisdell testified at the suppression hearing that Cantu was inside the detached garage for forty-five minutes.